Thomas A. DINGWALL, Plaintiff,

v.

FRIEDMAN FISHER ASSOCIATES, P.C., Defendant.

No. 96–CV–722 (LEK/DRH).

United States District Court, N.D. New York.

April 24, 1998.

---

*MEMORANDUM–DECISION
AND ORDER*

KAHN, District Judge.

Defendant Friedman Fisher Associates, P.C. ("Friedman Fisher") is an engineering consultant firm located in Colonie, New York, that provides various engineering services in New York and western New England. Plaintiff Thomas Dingwall was employed by Friedman Fisher from 1982 until May 1996 during which time he was primarily responsible for designing electrical systems for various projects. During his employment, plaintiff worked more than forty hours per week on many occasions but was never paid overtime compensation. He has now brought this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the N.Y. Labor Law § 663 to recover overtime pay allegedly due him under those statutes and associated regulations. Because the FLSA has a limitations period of two years, *see* 29 U.S.C. § 255(a), and an action for overtime compensation under N.Y. Labor Law § 663 has a period of six years, *see* N.Y. Labor Law § 663(3), plaintiff seeks overtime under the federal claim for the two years preceding his claim and under the state claim for the preceding six years.[1] Both parties have now moved for summary judgment on all claims.

*I. Discussion*

*A. Standard of Review*

A party is entitled to summary judgment if the party can establish that "there is no genuine issue as to any material fact" and that, based on the facts presented, "[it] is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is an issue that, if resolved in favor of the non-moving party, would permit a jury to return a verdict for that party. *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 57 (2d Cir.1997)(citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). In making its determination, a court must view facts, inferences drawn therefrom, and

Chamberlain and Kaufman, Albany, NY, Alan S. Kaufman, of counsel, for Plaintiff.

Gleason, Dunn, Walsh & O'Shea, Albany, NY, Ronald G. Dunn, of counsel, for Defendant.

---

1. FLSA actions have a three-year period if the violation was willful. 29 U.S.C. § 255(a). However, plaintiff does not argue that defendant's violations were willful.

ambiguities in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

## B. Fair Labor Standards Act

For employees covered under its provisions, the FLSA generally requires overtime compensation of one and one-half times the regular rate of pay for time worked in excess of forty hours per workweek. *See* 29 U.S.C. § 207(a)(1). Under. the FLSA's enforcement provisions, employers violating the Act may be required to pay uncompensated overtime, together with civil penalties and liquidated damages. *See* 29 U.S.C. § 216. However, the FLSA exempts from its overtime requirements any salaried employee who works in a "bona fide executive, administrative or professional" capacity. 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.1–.3; *Davis v. City of Hollywood*, 120 F.3d 1178, 1179 (11th Cir.1997), *reh. and pet. for reh. en banc denied sub nom, Davis v. Rowe*, 131 F.3d 157 (1997), *cert. filed*, No. 97–1320 (Feb 11, 1998). In this case, defendant asserts that plaintiff, as an engineer, falls under the professional exemption. Because the FLSA is a remedial act, the Court must construe its exemptions narrowly. *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir.1991), *cert. denied, Malcolm Pirnie, Inc. v. Martin*, 506 U.S. 905, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992). Defendant, as the employer, bears the burden of proving that an employee falls within an exempted category. *Id.*

The FLSA does not define what type of employee constitutes a "bona fide" professional for whom the FLSA does not require overtime pay. However, the Department of Labor has enacted regulations that establish a two-pronged analysis for determining whether an employee is an exempt professional, consisting of what is referred to as a "duties" test and a "salary" test. *See* 29 C.F.R. §§ 541.3, 541.103, 541.118, 541.312. In order to qualify under an exempt category, an employee's position must meet both the duties test and the salary test. *Cooke v.*

*General Dynamics Corp.*, 993 F.Supp. 56, 57 (D.Conn.1997).

### 1. Duties Test

The duties test for the professional exemption concerns whether the nature of the employee's duties are appropriately considered professional. *See Meringolo v. City of New York*, 908 F.Supp. 160, 164 (S.D.N.Y.1995) (analyzing analogous test for "executive" exemption). The Department of Labor ("DOL") regulations provide two separate means to satisfy this test; a "long" test at 29 C.F.R. § 541.3(a)–(e) and a "short" test at 29 C.F.R. § 541.3(e) (applicable where the employee receives at least $250 per week in compensation). *See also Freeman v. National Broadcasting Co., Inc.*, 80 F.3d 78, 82–83 (2d Cir.1996). The parties here do not dispute that the "short" test is applicable here.

Under the short test, an employee

whose primary duty consists of the performance ... of work [requiring knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes], which includes work requiring the consistent exercise of discretion and judgment ... shall be deemed [exempt from the FLSA overtime pay requirements.]

29 C.F.R. § 541.3(e). The parties agree that the "short" test is applicable in this case.

Applying this test, the Court concludes that plaintiff's primary duties do satisfy its requirements. Plaintiff's primary responsibility was to design electrical systems for various projects. This is clearly an area requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study. Plaintiff concedes that he has in fact obtained an Associates degree in Electrical Technology from Hudson Community College and he refers to himself in his deposition as a "design engineer." Dingwall Dep. at 23.

Further, his description of his actual duties reveals that the actual duties performed made use of his advanced skills and involved the consistent exercise of discretion and judgment as well. For a typical construction project, plaintiff would meet with one of the principals and determine with the principal and the other designers working on the project, what type of project it was and what would be involved. Plaintiff would then produce "some rough ideas" of what different parts of the project, including lighting and utility service, would require. Dingwall Dep. at 26. Later, after receiving input from other engineers, he would lay out the circuitry. If an existing building was being altered, he would visit the site to determine what changes would be necessary. In designing an electrical system, plaintiff would first look up the client's requirements, then look up a vendor that could provide the necessary equipment, and finally lay the design out on drawings. This process involved calculations made according to various published power standards. In light of these duties, the Court has no difficulty concluding that plaintiff satisfies the duties test for the professional exemption. *See Leslie v. Ingalls Shipbuilding, Inc.,* 899 F.Supp. 1578, 1582 (S.D.Miss.1995) (responsibility for preparing structural specifications and standards, selecting major equipment related to field, writing engineering progress reports and verifying that structural changes to ship would be sound required exercise of judgment and discretion for purposes of overtime regulations).

Plaintiff argues that the duties test is not satisfied because he is not a licensed engineer and could not therefore "practice engineering" and because a supervisory engineer was required to sign off on all his work. However, nowhere in the regulation is there a requirement that the employee hold a professional license. Rather, the duties performed and the knowledge they require are the focus of the test. Nor does the fact that plaintiff's designs were reviewed by another engineer mean that plaintiff did not exercise

his discretion and judgment in creating his designs. It only indicates that his judgments were subject to the approval of another.

As support for his argument that an unlicensed engineer performing supervised work is not a "professional," plaintiff points to a statement by the DOL that

> [the professional exemption] does not exempt all employees of professional employers .... Nor does it exempt, as such, those learning a profession. Moreover, it does not exempt persons with professional training, who are working in professional fields, but performing subprofessional or routine work .... The field of "engineering" has many person with "engineer" titles, who are not professional engineers, as well as many who are trained in the engineering profession, but are actually working as trainees, junior engineers, or draftsmen.

29 C.F.R. § 541.308. In the Court's opinion, plaintiff's interpretation misreads this paragraph, which merely requires that an employee personally satisfy the requirements of the duties test by virtue of duties actually performed.[2] Thus, it is not enough to be associated with advanced engineering work, or to play some routine or relatively unskilled role in the production of an advanced project. Plaintiff did not play such a role, and to refer to the actual work of electrical design as "subprofessional or routine" would fly in the face of common sense. Since the duties test is clearly satisfied, the Court now turns to the salary test.

### 2. Salary Test

■ The salary test contains two elements: a requirement that the exempt employee receive no less than a certain level of compensation, specified in the regulation, *see* 29 C.F.R. § 541.3(3), and a requirement that the employee's compensation be paid "on a salary basis." *Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249, 250 (S.D.N.Y.1997). The "salary basis" test provides that an employer claiming the professional exemption must

**2.** Concededly, a broader interpretation of the statement could be made. To the extent that this statement could be understood more broadly, the Court does not find it persuasive authority. *See*

*Freeman,* 80 F.3d at 83 ("Unlike regulations, interpretations [by the DOL] are not binding and do not have the force of law.").

pay the relevant employee "on a salary basis" as defined in the regulations. *Martin,* 949 F.2d at 613. Under the DOL's regulations,

> an employee will be considered to be paid 'on a salary basis' ... if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.118(a).

An employee is "subject to" improper deductions in salary only when "there is either an actual practice of making such deduction or an employment policy that creates a 'significant likelihood' of such deductions." *Auer v. Robbins,* 519 U.S. 452, ——, 117 S.Ct. 905, 907, 137 L.Ed.2d 79 (1997). Here, plaintiff asserts that there is both an actual practice and a significant likelihood of deductions for variations in the quantity of work performed. The Court agrees that there were actual deductions, and therefore does not reach the issue of significant likelihood.

The parties do not dispute that from September of 1991 through February of 1992, defendant reduced the work week of its staff, including plaintiff, from five days to four and simultaneously reduced their salaries by one-fifth. Employees were then able to collect one day of unemployment benefits, a benefit arrangement approved by the New York State Department of Labor.

Defendant argues that this arrangement was not a deduction in salary, but merely a change in the "regular" salaries to a new "predetermined" amount and that plaintiff was thus at all times offered a fixed salary. However, the Court cannot accept this interpretation of the salary basis test. Defendant was not merely altering plaintiff's fixed salary (which it undoubtedly had the right to do), it was altering it on the basis of a reduction in the amount of days worked in response to an insufficient amount of work available. The fact that this was done as an enforced policy of the employer rather than in response to decisions of the employee does not alter the basic fact: plaintiff's pay was reduced as a result of a reduction in days worked. The regulations expressly state that

> [a]n employee will not be considered to be 'on a salary basis' if deductions from his predetermined compensation are made for absences *occasioned by the employer or by the operating requirements of the business.* Accordingly, if the employee is ready, willing, and able to work, deductions may not be made for time when work is not available.

29 C.F.R. § 541.118(a)(1) (emphasis added). This language makes it clear that a reduction in work time that is imposed by the employer may not be the basis for a reduction in salary. That is precisely what occurred in this case.

Construing the salary basis part of the professional exception narrowly as it must, the Court finds that defendant's reductions in the amount of days worked in response to a lack of available work and a proportionate reduction in fixed salary constitutes an actual and improper deduction. Thus, the salary basis test is not satisfied and defendant's claim that plaintiff is exempt from the overtime requirements of the FLSA as a professional employee must be rejected.

## C. New York Labor Law

■ Like the FLSA, New York Labor Law imposes a requirement that employees pay time-and-a-half for work done in excess of forty hours a week. 12 N.Y.C.C.R. § 142–2.2. Similarly, there is an exception for employees working in a bona fide "professional capacity." 12 N.Y.C.C.R. § 142–2.16(c)(4)(iii). New York law differs from federal law, however, in that to establish the exception, the employer need not satisfy a "salary" test, only a duties test. Thus, the employer need only show that the employee was primarily engaged in work "requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study ...." *Id.* The New York language is essentially identical to that used in 29 C.F.R. § 541.3(a), which establishes the duties test for professionals under

the FLSA. It is therefore reasonable to look to case law interpreting the latter regulation.

As discussed above, the Court has concluded that plaintiff did perform the duties of an engineer in a manner which satisfies the duties test for the professional exemption. Because this is the only requirement under New York law, the plaintiff must be considered exempt from New York Labor Law requirements, even though he is not similarly exempt from the FLSA. Therefore, plaintiff is due overtime pay only for two years preceding the commencement of his action.

*D. Calculation of Overtime Compensation*

■ Under the FLSA, successful plaintiffs are entitled to receive pay for overtime hours (any hours worked in a week over forty) at a rate of one-and-one-half times their regular hourly rates of pay. 29 U.S.C. § 207. Because plaintiff's compensation was structured as an annual salary, payable in standard biweekly installments, the salary must first be converted to an hourly rate before overtime compensation can be determined. 29 C.F.R. § 778.109.

Hourly rates are determined by dividing the employee's biweekly compensation by the number of hours it was intended to compensate. 29 C.F.R. §§ 778.109, 778.113. The parties dispute, however, what hours plaintiff's compensation was intended to compensate for. Plaintiff asserts that his salary was intended to compensate for 40 hours of work per week. Defendant asserts that the salary was not intended to compensate for a fixed number of hours, but was intended to pay for however many hours plaintiff worked each week, and that the overtime should thus be calculated using the fluctuating workweek method described in 29 C.F.R. § 778.114:

> Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for hours worked each workweek whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay . . . .

29 C.F.R. § 778.114. Thus, where the "fluctuating workweek" is applied, an employee's regular weekly or bi-weekly salary is intended to compensate for however many hours are worked during that period. The hourly rate of pay for a particular week is then determined by dividing the compensation not by a fixed number of hours but by the actual hours worked during that week. A larger number of hours then results in a lower rate of pay. Further, because the salary is considered to compensate for all hours worked, even those hours beyond 40, the employee receives only an additional 50% of his hourly rate as overtime compensation for hours beyond forty instead of the usual 150%. *See* 29 C.F.R. § 778.114(a).

■ This method is an exception to the normal rights of the employee and thus the employer bears the burden of proving that all the requirements for applying the method are present. *See Burgess v. Catawba County*, 805 F.Supp. 341, 348 (W.D.N.C.1992). Critically, an employer must demonstrate that the employer and the employee had a clear, mutual understanding that the employer will pay the employee the fixed weekly salary regardless of the hours worked. *See Roy v. County of Lexington, S.C.*, 141 F.3d 533, 547 (4th Cir.1998). Here, defendant has failed to establish this requirement. There is no evidence in the record that plaintiff clearly understood that his salary was intended to compensate him for any hours worked. To the contrary, the employee manuals distributed at various times during plaintiff's employment all state that states that "[s]taff personnel are normally expected to work a 40 hour week with the exception of preestablished holidays." Pl.Ex. A at 1, B at 1, C at 1, D at 1. Thus, the fluctuating workweek method is inapplicable.

The Court must still determine the relevant fixed number of hours. As noted above, the employee manuals provided by management to plaintiff set the number of working

hours at 40. Further, time-use records filled out by plaintiff and provided to defendant during plaintiff's employment clearly indicated that plaintiff was claiming overtime for hours above 40 (excluding personal time). *See* Pl.Ex. E, Stangel Aff. at 11. Defendant disputes that the 40–hour requirement was ever intended to apply specifically to the plaintiff but does not argue for any other fixed number. Rather, it argues that plaintiff's salary was intended to compensate for any number of hours. As the Court has already rejected this argument, it accepts 40 hours as the appropriate number.

Plaintiff's suit was commenced on May 6, 1996; thus, plaintiff is entitled to overtime earned at any time after May 6, 1994. During this period, plaintiff received two rates of compensation: up until April 1, 1996, plaintiff was paid at a bi-weekly rate of $1,850.00. After April 1, 1996, plaintiff received a bi-weekly salary of $1,975.00. Thus, plaintiff's equivalent hourly rate (bi-weekly rate / 80) was $23.13 prior to April 1, 1996 and $24.69 after.

Plaintiff has provided a summary of overtime hours worked during the relevant periods. *See* Pl.Ex. F. Because the accuracy of these records is not disputed in defendant's papers, the Court may determine the appropriate overtime compensation on summary judgment.

The records indicate that, between May 6, 1994 and March 29, 1996, plaintiff worked 200.5 hours of overtime. At one-and-a-half times the regular rate of $23.13 per hour, plaintiff thus earned $6956.35 in overtime during that period. Between April 1, 1996 and April 19, 1996, plaintiff worked 16 hours of overtime at an overtime rate of $37.04, for an overtime compensation of $592.64. Total overtime compensation is thus $7548.99.

### E. *Liquidated Damages*

Finally, the Court must decide whether plaintiff should also receive liquidated damages. Section 216(b) of the FLSA provides that an employer who fails to compensate employees in accordance with § 207 "shall be liable to the ... employees affected in the amount of their ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Under 29 U.S.C. § 260, however,

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any [lesser] amount thereof....

29 U.S.C. § 260; *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1063 (2d Cir.1988).[3] The employer bears the burden of establishing that it meets this standard. *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir.1987). The burden on the employer "is a difficult one to meet, however, and [d]ouble damages are the norm, single damages the exception." *Reich*, 121 F.3d at 70 (citation and internal quotations omitted).

To establish "good faith," a defendant must produce "plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with it." *Reich, id.* at 71 (citation and internal quotations omitted). "Good faith" in this context "requires more than ignorance of the prevailing law or uncertainty about its development." *Id.* It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them. *Id.* That a company did not purposefully violate the provisions of the FLSA is therefore insufficient. *Id.*

Neil Stangel ("Stangel"), the president of the company, concedes that Friedman Fisher has never consulted an attorney prior to the lawsuit to determine what the FLSA required, and indeed was not aware. of the

---

**3.** This award is not supposed to be considered punitive, but is provided as a means " 'for losses [an employee] might suffer by reason of not receiving their lawful wage at the time it was due.' " *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 71 n. 4 (2d Cir.1997) (quoting *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir.1991)). It seems clear, however, that it also viewed as a punitive measure or else there would be little justification for excusing defendants who acted in good faith.

specific statute or its provisions, only of the existence of "a body of labor law." Stangel Dep. at 51–52. Stangel stated in deposition that "[w]hen you believe you are correct, it's very rare that you go out and pay somebody to tell you you are." Stangel Dep. at 52.

There can be no doubt that the enormous body of regulations imposed upon today's companies constitute a significant burden and a person might understandably be tempted to avoid some of the costs of compliance by relying on layman's knowledge. Further, it is rarely the case that essentially punitive damages will be imposed because of mere ignorance. Nevertheless, under the standards of the law that this Court must enforce, as described above, it is well-established that defendant has an affirmative obligation to seek legal counsel to ensure that its policies and actions comply with the FLSA. Because defendant took no "active steps" to ensure compliance and concedes ignorance with the provisions and requirements of the statute, this Court has no choice but to award liquidated damages. The total damage award is therefore $15,097.98.

Accordingly, it is hereby

ORDERED that plaintiff's motion for summary judgment is GRANTED in part and DENIED in part; and it is further

ORDERED that defendant's motion for summary judgment is GRANTED in part and DENIED in part; and it is further

ORDERED that judgment be entered for plaintiff in the amount of $15,097.98; and it is further

ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.