THEODORE G. ROBINSON, Indiv. and on Behalf of a Class of Employees Similarly Situated, Plaintiff-Appellant, v. TELLABS, INC., Defendant-Appellee.

First District (1st Division)    No. 1—07—2731

Opinion filed April 27, 2009.

Jac A. Cotiguala, of Jac A. Cotiguala & Associates, and Joel M. Hellman, both of Chicago, for appellant.

P. Kevin Connelly and Brian E. Spang, both of Drinker Biddle & Reath LLP, and James W. Gladden, Jr., and Robert A. Bloom, both of Mayer Brown LLP, both of Chicago, for appellee.

JUSTICE GARCIA delivered the opinion of the court:

This class action appeal arises from a finding of no liability under the Illinois Minimum Wage Law (820 ILCS 105/1 *et seq.* (West 2000)) for the defendant, Tellabs, Inc., after a bifurcated trial. Judge Billik ruled that Tellabs's policy of imposing unpaid days off following or preceding paid holidays to cope with difficult economic conditions satisfied the "salary basis test" because the days off were imposed prospectively for *bona fide* business needs. On appeal, Robinson, an engineer, hired as an overtime-exempt professional employee, contends that when Tellabs instituted the mandatory-days-off-without-pay program, it lost its professional exemption for Robinson and the class he represents, triggering an obligation to pay overtime wages under the Illinois Minimum Wage Law. Under the facts adduced at trial, Robinson contends that as a matter of law, Tellabs cannot satisfy the "salary basis test" to retain the professional exemption because he received lower pay for the interspersed holiday weeks that included the days off without pay. Consequently, Robinson's compensation was "not regularly received" for a "fixed period."

We agree with Judge Billik's finding of no liability. After Tellabs instituted the mandatory-days-off-without-pay program, Robinson continued to be a "bona fide *** professional" employee paid on a "salary basis," as those terms appear in the Federal Fair Labor Standards Act of 1938 (29 U.S.C. §213(a)(1) (2000)), as defined and interpreted by the federal Department of Labor in its regulations and opinion letters, which our legislature incorporated into the Illinois Minimum Wage Law. Accordingly, we hold the plaintiff, Theodore Robinson, and the class he represents, is not entitled to overtime wages. We affirm the circuit court's judgment.

## BACKGROUND

Tellabs manufactures components used in the telecommunications industry. After experiencing unprecedented growth in the late 1990s, Tellabs's profits dramatically and unexpectedly declined. By April 2001, the salaries of Tellabs's officers were reduced, employee salary increases were frozen, several hundred employees were laid off, and budgets for travel, training, and advertising were eliminated.

These measures proved insufficient, and additional cost-cutting actions were necessary. Tellabs chief executive officer (CEO) Richard Notebaert considered two options: (1) implementing a 5% "across the board" pay cut; or (2) imposing mandatory days off without pay during certain holiday weeks. Notebaert chose the latter, believing the former would negatively impact employee morale and encourage the most valuable employees to resign.

In accordance with Tellabs's so-called "unpaid holiday" policy, United States-based employees were informed on June 18, 2001, that they could not work on, and would not be paid for, Thursday, July 5, and Friday, July 6, 2001. They did not work on, but were paid for, the July 4 holiday. At a July 26, 2001, "Town Hall Meeting" between Tellabs employees and executives, Tellabs announced four additional unpaid holidays. Employees were prohibited from working on, and were not paid for, the Friday before Labor Day (August 31, 2001), the Wednesday before Thanksgiving (November 21, 2001), the day before Christmas (December 24, 2001), and New Year's Eve (December 31, 2001). They did not work on, but were paid for, the actual holidays falling within those weeks—Labor Day, Thanksgiving Day and the Friday after, Christmas Day, and New Year's Day. Of the 2,931 overtime-exempt employees employed by Tellabs as of July 5, 2001, only 2 were not required to take at least 1 unpaid day during 2001.

The unpaid holiday policy was insufficient to stem the financial tide against Tellabs, and additional employees were laid off. By June 2002, almost one-half of the 9,200 people that Tellabs employed in September 2000 had been let go.

The named plaintiff, Theodore Robinson, was hired by Tellabs as a lead engineer in February 2001 with a biweekly salary. For the pay periods ending July 7, 2001 (incorporating the July 5 and 6 unpaid holidays), and January 5, 2002 (incorporating the December 24 and 31 unpaid holidays), Robinson received only 80% of his salary. For those pay periods incorporating the August 31 and November 23 unpaid holidays, Robinson received 90% of his salary. For all other pay periods Robinson received his full salary. During the full-work weeks after the mandatory-days-off-without-pay program was instituted, while he may have worked more than 40 hours, Robinson did not receive overtime pay. He was laid off on January 22, 2002.

The plaintiff filed a class action lawsuit against Tellabs.[1] His amended complaint alleged Tellabs's practice of implementing mandatory days off without pay triggered the loss of the overtime exemption for "professional employees" paid on a "salary basis" under the Illinois Minimum Wage Law (Wage Law). The class members alleged they were entitled to, but were not paid, overtime wages for those weeks in which they worked more than 40 hours.

The circuit court bifurcated the case into liability and remedy phases. The liability phase proceeded to a four-day bench trial, after

---

[1]Tellabs chief executive officer Richard Notebaert was individually named as a defendant, but was dismissed without prejudice. Robinson was substituted for the original named plaintiff, Roger Wade.

which the circuit court found for Tellabs. Relying upon the Tenth Circuit's decision in *In re Wal-Mart Stores, Inc.*, 395 F.3d 1177 (10th Cir. 2005), the court concluded the mandatory days off without pay amounted to prospective salary reductions implemented for *bona fide* business needs. Accordingly, the circuit court held Robinson and the class remained overtime-exempt employees, thus barring any liability on the part of Tellabs. This timely appeal followed.

## ANALYSIS

On appeal, Robinson contends the circuit court erred in concluding that he and the other class members continued to be paid on a "salary basis" after the mandatory-days-off-without-pay program was instituted. We begin our review setting forth the scope of this appeal, our standard of review, and the applicable statutory and regulatory framework.

### Scope of Review

■ Robinson attacks three rulings on appeal: (1) the denial of his motion for summary judgment; (2) the judgment following trial; and (3) the denial of his posttrial motion to reconsider. We agree with Tellabs that we need address only the judgment following trial. The summary judgment ruling merged into the judgment after trial. See, *e.g.*, *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 355, 770 N.E.2d 177 (2002) ("when a motion for summary judgment is denied and the case proceeds to trial, the denial of summary judgment is not reviewable on appeal because the result of any error is merged into the judgment entered at trial"). Because the motion to reconsider did not raise new evidence or a change in law, it is indistinguishable from Robinson's challenge to the judgment. *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 838-39, 781 N.E.2d 1114 (2002) (where a motion to reconsider alleges only that the circuit court erred in granting judgment for the opposing party, it is indistinguishable from the appellant's challenge to the judgment entered following trial). Accordingly, we address only the circuit court's judgment that Tellabs has no liability under the Wage Law based on its mandatory-days-off-without-pay program.

### Standard of Review

The parties offer different approaches to the standard of review. Robinson advocates *de novo* review, arguing the only issue is whether the circuit court correctly applied the law to the undisputed facts. Tellabs contends a two-step standard of review applies: (1) the circuit court's factual findings are reviewed under the manifest weight of the evidence standard, and (2) the circuit court's legal applications are reviewed *de novo*.

Robinson makes clear, however, he does not challenge any of the circuit court's factual findings.[2] Rather, he raises only the issue of whether the trial court properly applied the salary basis test to the undisputed facts. This issue, both parties agree, presents a legal question subject to *de novo* review. See *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 152, 839 N.E.2d 524 (2005) ("the trial court's ultimate legal determination is subject to *de novo* plenary review").

## Applicable Framework

Robinson contends he and other members of the class were not paid on a salary basis once Tellabs imposed the edict of six unpaid holidays in 2001, rendering them nonexempt, hourly employees eligible for overtime pay. He argues, accordingly, he is entitled to overtime wages for those weeks in which he worked more than 40 hours.

For this overtime claim, Robinson invokes section 4a(1) of the Illinois Minimum Wage Law, which generally requires employers to pay employees time and one-half for any hours worked more than 40 in one workweek. 820 ILCS 105/4a(1) (West 2000). The overtime provision of section 4a(1), however, does not apply to so-called "white collar workers," those who are "employed in a bona fide executive, administrative or professional capacity." 820 ILCS 105/4a(2)(E) (West 2000).

The Wage Law does not define such "white collar workers." Instead, the Wage Law refers to "bona fide executive, administrative, or professional capacity" employees "as defined by or covered by the Federal Fair Labor Standards Act of 1938, as now or hereafter amended." 820 ILCS 105/4a(2)(E) (West 2000).

■ The Federal Fair Labor Standards Act of 1938 (FLSA) grants overtime exemption to "any employee employed in a bona fide executive, administrative or professional capacity," but also does not define those terms. 29 U.S.C. §213(a)(1) (2000). Instead, Congress granted "the Secretary [of Labor] broad authority to 'defin[e] and delimi[t]' the scope of the exemption for executive, administrative, and professional employees." *Auer v. Robbins*, 519 U.S. 452, 456, 137 L. Ed. 2d 79, 87, 117 S. Ct. 905, 915 (1997); 29 U.S.C. §213(a)(1) (2000).

■ Under the Department of Labor's (DOL) regulations, the employer must satisfy two tests to exempt its employees from overtime pay. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97, 41 L. Ed. 2d 1, 11, 94 S. Ct. 2223, 2229 (1974). First, the employee must perform executive, administrative, or professional duties ("the duties test");

---

[2]Judge Billik expressly found that the days-without-pay program was implemented for *bona fide* business needs. This finding is not challenged on appeal by Robinson.

second, the employee must be paid on a "salary basis" ("the salary basis test"). 29 C.F.R. §541.1—541.3 (2001). In this case, only the "salary basis test" is at issue.

■ The Code of Federal Regulations, section 541.118(a) of Title 29, sets forth the qualifications for a salary-based employee:

"(a) An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work." 29 C.F.R. §541.118(a) (2001).[3]

Subsections (a)(1) through (a)(6) of regulation section 541.118 limit the circumstances under which an employer may impose "deductions" from a salary without affecting the employee's salaried status. Employers are prohibited from taking deductions from a predetermined salary "for absences occasioned by the employer or by the operating requirements of the business" (29 C.F.R. §541.118(a)(1) (2001)), or for absences "caused by jury duty, attendance as a witness, or temporary military leave" (29 C.F.R. §541.118(a)(4) (2001)). However, an employer may make "deductions" for absences of a day or more due to personal reasons (29 C.F.R. §541.118(a)(2) (2001)), or due to health reasons, if done pursuant to a *bona fide* plan (29 C.F.R. §541.118(a)(3) (2001)). Employers may also in good faith impose "penalties" for "infractions of safety rules of major significance" without impacting the salary status of an employee. 29 C.F.R. §541.118(a)(5) (2001).

While not expressly based on statutory or regulatory language, opinion letters issued by the DOL have interpreted regulation section 541.118(a) as allowing employers, in some cases, to prospectively "reduce" employees' salaries to address *bona fide* business needs. See, e.g., *In re Wal-Mart*, 395 F.3d at 1185-86 (citing DOL opinion letters). The DOL's interpretation of its own regulation is controlling "unless [it is] plainly erroneous or inconsistent with the regulation." (Internal quotations omitted.) *Auer*, 519 U.S. at 461, 137 L. Ed. 2d at 90, 117 S.

---

[3]29 C.F.R. §541.118 was amended in 2004. The parties assert, and we agree, that the 2001 version of §541.118 applies.

Ct. at 911. Judge Billik concluded that Tellabs's unpaid holiday policy fell within this exception recognized by the DOL.

## Tellabs's Liability

To support his contention that the unpaid holiday policy voided the professional exemption that would otherwise have applied, Robinson contends Tellabs violated the salary basis test for two reasons. First, the policy amounted to deductions not authorized by 29 C.F.R. §541.118(a)(2), (a)(3), or (a)(5). Second, because his compensation varied depending on whether zero, one, or two unpaid holidays fell within a given pay period, his salary was not "regularly received" for a "fixed period."

We are aware of no Illinois case addressing the salary basis test in the context of employees initially hired in an exempt, professional capacity. We thus first look to the Tenth Circuit's decision in *In re Wal-Mart*, 395 F.3d 1177, relied upon by Judge Billik in issuing his judgment, which we understand Robinson to contend was, if not wrongly decided, wrongly relied upon by the circuit court.

## In re Wal-Mart

*In re Wal-Mart* came before the court of appeals on grants of summary judgment in three cases. *In re Wal-Mart*, 395 F.3d at 1179. Two of the cases were consolidated after a parallel state court action was removed to the federal district court. *In re Wal-Mart*, 395 F.3d at 1179. The district court judge entered summary judgment for the plaintiffs in the consolidated cases, "after determining that Wal-Mart 'engaged in a practice or policy of reducing base hours and base pay for the company's own interest.' " *In re Wal-Mart*, 395 F.3d at 1179, quoting *In re Wal-Mart Stores, Inc.*, 58 F. Supp. 2d 1219, 1222 (D. Colo. 1999). In the subsequently filed federal action, summary judgment was entered based on issue preclusion. *In re Wal-Mart*, 395 F.3d at 1180. The three cases were heard as a consolidated appeal.

According to the plaintiffs, Wal-Mart reduced the base hours of its full-time pharmacists with a commensurate reduction in their base salary in response to a decline in sales typically experienced during seasonal slowdowns. In their suit, the pharmacists asserted that based on the fluctuations in their salary, they were no longer white-collar workers and, accordingly, were entitled to overtime wages under the FLSA.

The court of appeals reversed the grants of summary judgment and remanded for "further factual determinations." *In re Wal-Mart*, 395 F.3d at 1180. In its discussion, the court explained that it could not, as a matter of law, conclude "that Wal-Mart altered the salaries of full-time pharmacists with such frequency that the purported salary

amounted to an hourly wage." *In re Wal-Mart*, 395 F.3d at 1180. While it left unsettled the claim of the full-time pharmacists against Wal-Mart, it did address the legal questions presented by the appeal. We take guidance from its discussion of the legal issues.

Much of the court of appeals' initial discussion focused on the regulatory framework between the FLSA and the DOL regulations and opinion letters, much as we did above. The court then focused on the language of regulation section 541.118(a) that exempt employees receive a salary in "a predetermined amount." 29 C.F.R. §541.118(a) (2003). The employees contended they were not paid a "predetermined amount" because the amount of pay "varied in accordance with the employer's business needs or 'the quantity of work performed' even when the pharmacist was 'ready, willing and able to work.' " *Wal-Mart*, 395 F.3d at 1183, quoting 29 C.F.R. §541.118(a) (2003). The court declined to read the regulation so broadly. "[A]n employer may prospectively reduce salary to accommodate the employer's business needs unless it is done with such frequency that the salary is the functional equivalent of an hourly wage." *In re Wal-Mart*, 395 F.3d at 1184. The court rejected the employees' claims that the reduction in prospective salary was a prohibited *deduction* for absences occasioned by the employer or by the operating requirements of the business under 29 C.F.R. §541.118(a)(6) (2003). The court interpreted regulation section 541.118(a) "as prohibiting only reductions in pay made in response to certain events in a period for which the pay had been set, not salary reductions to take effect in future pay periods." *In re Wal-Mart*, 395 F.3d at 1184. In other words, "the requirement that exempt employees receive at least a 'predetermined amount' as salary does not preclude an employer from making occasional prospective salary reductions before the affected pay period in response to business needs." *In re Wal-Mart*, 395 F.3d at 1185. The Tenth Circuit noted that even if the regulations did not clearly delineate between prospective reductions and deductions for events in the current pay period, "the ambiguity is resolved by the DOL's opinion letters." *In re Wal-Mart*, 395 F.3d at 1185.

The court addressed three DOL opinion letters issued in response to employers who sought to reduce the work schedules and corresponding pay of overtime-exempt employees during economic slowdowns. The opinion letters adhered to the position that "a fixed reduction in salary effective during a period when a company operates a shortened workweek due to economic conditions would be a bona fide reduction not designed to circumvent the salary basis payment." *In re Wal-Mart*, 395 F.3d at 1186, quoting DOL Opinion Letter, February 23, 1998; see also DOL Opinion Letter No. WH—93, November 13, 1970 (conclud-

ing an employer may reduce the final five workweeks of the year from five days to four and proportionately reduce its employees' salaries without offending the salary basis test so long as the reductions were not "recurrent"); DOL Opinion Letter, March 4, 1997 (concluding a public employer could reduce its workweek by eight hours with a commensurate reduction in salary to accommodate a lack of state funding because regulation "[s]ection 541.118 does not preclude a bona fide reduction in an employee's salary which is not designed to circumvent the salary basis requirement").

In reversing the grants of summary judgment, the Tenth Circuit made clear that "Wal-Mart could reduce its pharmacists' work hours and salaries to decrease its operational costs in light of declining prescription sales. So long as Wal-Mart's practice was not too common [so as to constitute a sham], the reduction in base hours would be a 'bona fide reduction not designed to circumvent' the salary-basis requirement." *In re Wal-Mart*, 395 F.3d at 1186, quoting DOL Opinion Letter, February 23, 1998. It appears because Wal-Mart challenged the factual assertions in the affidavits filed in support of the motions for summary judgment with its contrary evidence that it rarely reduced the salaries of full-time pharmacists (*In re Wal-Mart*, 395 F.3d at 1184), the cases were remanded for further proceedings. We note, however, that the remand in *In re Wal-Mart* for factual determinations does not undermine the court's legal analysis.

## Deductions versus Reductions

In this case, Robinson contends the circuit court erred in following *In re Wal-Mart*. He argues *In re Wal-Mart*'s rule—that an employer may prospectively reduce employee salaries to accommodate *bona fide* business needs unless done so frequently that the salaries are the functional equivalent of an hourly wage—defies the plain language of section 541.118(a) and its three exceptions enumerated in subparts (a)(2), (a)(3), and (a)(5). Robinson argues this case is controlled not by *In re Wal-Mart*, but by *Dingwall v. Friedman Fisher Associates*, 3 F. Supp. 2d 215 (N.D.N.Y. 1998).

In *Dingwall*, the district court relied upon the regulation's prohibition against *deductions* for "absences occasioned by the employer or by the operating requirements of the business" (29 C.F.R. §541.118(a)(1) (1997)) in holding a six-month-long reduction in schedule and pay offended the salary basis test. *Dingwall*, 3 F. Supp. 2d at 220. In this case, Robinson seizes upon *Dingwall*'s logic and argues that Tellabs's unpaid holiday policy violates the salary basis test because it does not fall within one of the regulation's three enumerated instances permitting an employer to *deduct* from an

employee's salary: (1) where the employee absents himself for a day or more for personal reasons; (2) where the employee absents himself for health reasons in certain circumstances; and (3) where the employee violates a safety rule of major significance (29 C.F.R. §§541.118(a)(2), (a)(3), (a)(5) (2001)).

The three cases, *In re Wal-Mart, Dingwall*, and the case at bar, all involve the situation where an employer reduces the *future* work schedules of its white-collar employees with a commensurate reduction in pay. We conclude that *In re Wal-Mart*, based on its reliance on the DOL's opinion letters, rather than *Dingwall*, which did not address such letters, demonstrates the correct construction and application of the salary basis test in such a situation. "Because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling unless ' "plainly erroneous or inconsistent with the regulation." ' [Citation.]" *Auer*, 519 U.S. at 461, 137 L. Ed. 2d at 90, 117 S. Ct. at 911. *In re Wal-Mart* correctly looked to the language of the DOL's regulation and the DOL's interpretation of it in its opinion letters in determining whether such acts fall within the salary basis test. It concluded the salary basis test permits employers to *prospectively reduce* employees' salaries for a legitimate business need unless done so frequently that the purported salary becomes a sham attempt to pay an hourly wage. *In re Wal-Mart*, 395 F.3d 1177.

*Dingwall*, on the other hand, looked only to the regulation's language without considering the DOL's opinion letters. In holding the employer's actions violated the salary basis test, the *Dingwall* court considered only the circumstances under which an employer is prohibited from *deducting* from an employee's *current* salary ("for absences occasioned by the employer or by the operating requirements of the business" (29 C.F.R. §541.118(a)(1) (1997)) *Dingwall*, 3 F. Supp. 2d at 220), essentially the first argument Robinson makes before us.

The employer in *Dingwall*, however, did not take *deductions* from its employees' *current* salaries. Rather, like Wal-Mart and Tellabs, the employer in *Dingwall reduced* its employees' *future* pay. The *Dingwall* court failed to consider the distinction between deductions and reductions: deductions occur in the instant pay period and are permitted only in certain enumerated circumstances; reductions, on the other hand, affect future pay periods and are permissible in the situations delineated in the DOL's opinion letters. The Tenth Circuit faulted *Dingwall*'s reasoning on this very basis when it noted that regulation section 541.118(a)(1) "refers only to deductions during the current pay period, for which the salary has been fixed, not reductions in future salary." *In re Wal-Mart*, 395 F.3d at 1188. The Tenth Circuit

also faulted *Dingwall*'s failure to consider the DOL opinion letters permitting prospective salary reductions for *bona fide* business needs. *In re Wal-Mart*, 395 F.3d at 1188 ("Most importantly, and remarkably, the [*Dingwall*] court made no reference to the applicable opinion letters").

■ We agree with *In re Wal-Mart*'s criticism of *Dingwall*. The case at bar does not involve deductions from the current pay period; rather, it involves reductions in an employee's future pay. Thus, we reject Robinson's reliance on the regulations' enumerated circumstances under which an employer may deduct from an employee's current salary.

Further, as the United States Supreme Court noted in *Auer*, the DOL's opinion letters are controlling, except in circumstances not argued before us. *Auer*, 519 U.S. at 461, 137 L. Ed. 2d at 90, 117 S. Ct. at 911. Our General Assembly has opted not to define the circumstances under which an employee is exempt from the overtime requirements of the Wage Law; instead, it has chosen to defer to decisions by Congress and the DOL. 820 ILCS 105/4a(2)(E) (West 2000) (referring to "bona fide executive, administrative or professional capacity *** as defined by or covered by the Federal Fair Labor Standards Act of 1938"). Robinson does not attack the DOL's wisdom in providing that "a fixed reduction in salary effective during a period when a company operates a shortened workweek due to economic conditions would be a bona fide reduction not designed to circumvent the salary basis payment." DOL Opinion Letter, February 23, 1998.

Because we find the holding in *Dingwall* misguided, we reject Robinson's reliance on *Dingwall* for his contention that because Tellabs's unpaid holiday policy does not fall within an exception enumerated in sections 541.118(a)(1), (a)(2), and (a)(5), the salary basis test is not satisfied. Instead, we adopt the analysis *In re Wal-Mart*, which recognizes the deference owed to the DOL's interpretations of its own regulations.

### Fixed Duration

Robinson finally contends that Judge Billik failed to recognize that the salary basis test requires that the predetermined amount of compensation be *regularly received*. He contends that Tellabs's unpaid holiday policy amounted to a "repeated *ad hoc* imposition of days-off-without-pay." Thus, from June 2001 forward, Robinson did not *regularly receive* a salary in a fixed amount. Robinson seeks to distinguish Tellabs's salary reduction policy from those at issue in *In re Wal-Mart* and the cited DOL opinion letters based on the length of the covered period for the reduced salaries. According to Robinson, to be regularly received, the compensation must be for a set period.

Consistent with this claim, Robinson contends that the salary reduction policies addressed in the DOL Opinion Letters of November 13, 1970, March 4, 1997, and February 23, 1998, involved prospective reductions for fixed periods, such as the final weeks or months of the year. He argues that the policy at issue in *In re Wal-Mart* satisfied the salary basis test because those unpaid days were fixed for a "relatively long period[ ] of time." Robinson asserts that in this case, by contrast, "[Tellabs] reduced pay for only one workweek. Then it decided to do it again, four more separate times." In other words, because Tellabs's policy imposed sporadic mandatory days off throughout the second half of 2001, it fell outside the salary basis test. Robinson points to *Hurley v. Oregon*, 27 F.3d 392 (9th Cir. 1994), and a recent opinion letter issued by the DOL on January 16, 2009, as supporting his position.

In *Hurley*, the Ninth Circuit held that because the Oregon State Police could reduce pay for violations of department rules or policies, the affected employees were not "paid on a 'salary basis.' " *Hurley*, 27 F.3d at 393. The court concluded that "the 'economic sanctions' provided for in the Manual [of the Oregon State Police] serve to invalidate the state's classification of the Class members as salaried employees." *Hurley*, 27 F.3d at 393. The court rejected the Oregon State Police's argument that because the economic sanctions were imposed only on the prospective pay period, "the 'salary' reductions did not affect the Class members' salaried status." *Hurley*, 27 F.3d at 395. In this context, the court stated that a " 'predetermined amount' is defined as the amount that is 'regularly receive[d] each pay period.' " *Hurley*, 27 F.3d at 395, quoting 29 C.F.R. § 541.118(a) (2001). Because the employees were subject to having their earnings reduced, albeit prospectively, based on such infractions as not being " 'polite' " or not having a " 'neat' " appearance, the pay received could vary from pay period to pay period. *Hurley*, 27 F.3d at 394. While the *Hurley* court may have engaged in an overstatement when it noted that "under no circumstances can an amount established for one pay period only qualify as salary under the 'regularly received each pay period' standard," it is clear that it was the economic sanctions imposed for rule or policy infractions that triggered the lower pay. And, of course, during this disciplinary period, the employees would receive less than the "predetermined amount." *Hurley*, 27 F.3d at 395. Based on this policy established in the Oregon State Police Manual, it necessarily followed that the employees were not overtime-exempt. We distinguish *Hurley* as a case involving a salary deduction for a rule or policy infraction, not falling within a "safety rules" deduction under section 541.118(a)(5) (29 C.F.R. §541.118(a)(5) (2001)); it offers no guidance on the case before us involving a salary reduction for economic reasons. *Hurley*, 27 F.3d at 394.

The DOL letter relied upon by Robinson is likewise inapposite. The DOL, in its January 16, 2009, opinion letter, concluded an employer's proposed policy of requiring exempt employees to stay home or leave work early during periods of insufficient work, resulting in reduced pay in some cases, fell outside the salary basis test. In so concluding, the DOL distinguished the policy from those found acceptable in the November 13, 1970, and February 18, 1999, opinion letters because those policies involved a "permanent change" for a "fixed" period—such as the final five weeks of the year, or for an indefinite period. The policy proposed in the January 16, 2009, opinion letter, however, involved "precisely the circumstances the salary basis test is intended to preclude"—the scenario where the employer picks and chooses on a day-to-day or week-to-week basis whether an employee is needed, and the amount he or she would be paid. DOL Opinion Letter No. FLSA2009—18, January 16, 2009, at 4.

The Tellabs policy is unlike those addressed in *Hurley* and the January 16 opinion letter. The policies in *Hurley* and the January 16 opinion letter involved the types of policies the salary basis test is clearly intended to preclude: day-to-day or week-to-week determinations of whether an employee is needed or the amount he or she will be paid. Such determinations fall within the textbook definition of an hourly employee, rather than a salaried employee. Tellabs's policy, on the other hand, did not involve such daily or weekly determinations. Rather, the employer in this case decided to prospectively reduce *all* employees' work weeks and salaries for future holiday weeks for a *bona fide* business need.

Moreover, we disagree with Robinson's classification of the unpaid days off as being made on an *"ad hoc"* basis. Here, Tellabs informed its employees as of July 26, 2001, that there would be four unpaid days off abutting the remaining paid holidays of the year: August 31, 2001, November 21, 2001, December 24, 2001, and December 31, 2001. We simply fail to see how this announced policy was not for a fixed period of time, even though there were long gaps between the clearly identified dates.

Robinson appears to concede that the salary basis test would have been satisfied if Tellabs had shut down for the last four work days of 2001, or for the final four Fridays of the year (fixed periods under Robinson's claim), but because Tellabs shut down for four unrelated or interspersed days, the salary basis test was violated. This is a distinction without legal significance. Tellabs's decision to impose the mandatory days off in line with the paid holidays through the balance of the year qualifies as a fixed period. See, *e.g.*, *Havey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 163-64 (2d Cir. 2008) ("The [DOL's]

regulations specify that a salaried employee must be paid a fixed and predetermined amount [citation] but do not prescribe when or how frequently this fixed element of compensation may be determined. Indeed, the agency's use of the word 'predetermined' to describe the salary requirement indicates only that this element of an employee's compensation must be both fixed and determined prior to the period in which it would apply").

We also reject Robinson's analogy of Tellabs's "unpaid holiday" policy to that in which an employer refuses to pay for a holiday that falls during the period the facility is closed. Robinson cites in support DOL opinion letters addressing that situation. Those same opinion letters were distinguished in *In re Wal-Mart* because they "concern[ed] only deductions from an employee's established salary within a pay period" and "did not address the issue of prospectively reducing an employee's salary." *In re Wal-Mart*, 395 F.3d at 1187. As noted above, this case does not involve deductions in a current pay period, but rather involves prospective reductions for a *bona fide* business need. That Tellabs chose to refer to the mandatory days off without pay as "unpaid holidays" is a matter of semantics without legal effect.

## CONCLUSION

We agree with the circuit court's holding that Robinson and the other class members retained their exempt, professional status consistent with the salary basis test even though their biweekly salary fell during four pay periods in the second half of 2001. Tellabs's mandatory-days-off-without-pay program did not convert these professional employees into hourly workers, which would otherwise have made them eligible for overtime wages under the Wage Law. The judgment of the circuit court of Cook County is affirmed.

Affirmed.

R. GORDON, P.J., and WOLFSON, J., concur.