### CONCLUSION

We conclude that the district court was correct in finding that the defendant in this case adequately demonstrated that the plaintiffs were engaged in a "bona fide . . . professional capacity" pursuant to the Department of Labor regulations, both because the plaintiffs' duties required advanced knowledge and discretion and because they were paid on a fee basis, as that term has been interpreted by the Administrator of the Department's Wage and Hour Division. In other circumstances, however, the work of nurses performing home health care visits may indeed become merely "a series of jobs which are repeated an indefinite number of times," 29 C.F.R. § 313(b), and in such cases those nurses would not qualify for the professional exemption.

The judgment of the district court is AFFIRMED.

---

good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the regulations by the Administrator of the Wage and Hour Division. See 29 U.S.C. § 259(a), (b)(1); 29 C.F.R. §§ 790.13, 790.19. *Square D* is typical in its holding that an employer may not assert the defense based on the opinion of a lower Wage and Hour Division official, in that case a Regional Director, where both the statute and the regulations refer to reliance on the Administrator's writings. *See Square D*, 459 F.2d at 810-11. Although plaintiffs here do not, of course, argue the affirmative defense, in effect they seek to rely upon the internal memorandum as persuasive evidence of the Department's stance regarding home health care nurses and the professional exemption. We note that the Department itself does not join the plaintiffs, either as intervenor or as amicus, in making this argument.

---

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0070P (6th Cir.)
File Name:  00a0070p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MARCIA FAZEKAS; CAROLE LELAND; CAROL PERNELL; SUSAN SHELKO; REBECCA WINFIELD,
        *Plaintiffs-Appellants,*

        *v.*

THE CLEVELAND CLINIC FOUNDATION HEALTH CARE VENTURES, INC.,
        *Defendant-Appellee.*

No. 99-3059

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 97-01394—Patricia A. Gaughan, District Judge.

Argued:  December 15, 1999

Decided and Filed:  February 25, 2000

Before:  NELSON and DAUGHTREY, Circuit Judges;
        BERTELSMAN, District Judge.[*]

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

———————————

**COUNSEL**

**ARGUED:**  Morris L. Hawk, GOLDSTEIN & ROLOFF, Cleveland, Ohio, for Appellants.  Richard A. Millisor, MILLISOR & NOBIL, Cleveland, Ohio, for Appellee. **ON BRIEF:**  Morris L. Hawk, David Roloff, GOLDSTEIN & ROLOFF, Cleveland, Ohio, for Appellants.  Richard A. Millisor, MILLISOR & NOBIL, Cleveland, Ohio, Mary Adele Springman, DAVID G. HILL & ASSOCIATES, Cleveland, Ohio, for Appellee.

———————————

**OPINION**

———————————

MARTHA CRAIG DAUGHTREY, Circuit Judge.  The plaintiffs in this action are registered nurses formerly employed by the defendant, Cleveland Clinic Foundation Health Care Ventures, Inc.  They sued, alleging violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (1994), for failure to pay for overtime work, and they demanded back pay, liquidated damages, and attorneys' fees.  The defendant moved for summary judgment on the issue of its liability under the Act, and the plaintiffs in turn filed a cross-motion for summary judgment.  The district court granted the defendant's motion and denied that of the plaintiffs.  For the reasons set out below, we affirm the judgment of the district court granting summary judgment to the defendant.

### PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs Marcia Fazekas, Carole Leland, Carole Pernell, Susan Shelko, and Rebecca Winfield, registered nurses formerly employed by the defendant, performed home health care visits for patients in the Cleveland metropolitan area during 1995 and 1996.  These visits generally involved treating patients for diagnosed medical conditions, designing

appears to us that the work performed during each home health care visit, given the number of different circumstances unique to each patient's treatment plan as that patient progresses, is closer to the work performed by a singer, who may, after all, perform the same song or set of songs over and over again during a series of performances, or that of an illustrator, who may similarly repeat the same drawings or set of drawings as necessary, than it is to the payments for "piecework" described in the regulations as payments not on a "fee basis."

We acknowledge that the result we reach here is not consistent with the 1998 opinion letters issued by Division personnel as to the uniqueness of the work of home health care nurses.  Yet, these letters are themselves inconsistent, not just with the 1992 letter but also with other, more recent opinion letters tending to exempt registered nurses from the Act's overtime-pay provisions, given the duties that these health care professionals often perform.  *See* Opinion Letter, Wage and Hour Division, United States Dep't of Labor, 1999 WL 10002385 at *2 (1999); Opinion Letter, Wage and Hour Division, United States Dep't of Labor, 1999 WL1002374 at *3-*4 (1999).  We note the holdings of this court and of our sister courts that the written opinions of the Administrator or his deputies constitute the most reliable interpretations of the Department's regulations.  *See Hodgson v. Square D Co.*, 459 F.2d 805, 810-11 (6th Cir. 1972); *see also Roy v. County of Lexington*, 141 F.3d 533, 543 (4th Cir. 1998); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 (10th Cir. 1994); *Bouchard v. Regional Governing Bd. of Region V Mental Retardation Servs.*, 939 F.2d 1323, 1328 (8th Cir. 1991); *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 926 (11th Cir. 1987).[3]

———————————

nurses according to a 'per visit' arrangement."

[3]These cases interpret § 10 of the Portal-to-Portal Act, 29 U.S.C. § 259 (1994), and accompanying regulations which provide an affirmative defense to employers charged with violations of the minimum wage and overtime pay provisions of the Fair Labor Standards Act if they relied "in

. . .

Q:  Each patient visit, each treatment is unique?

A.  Yes.

While the internal memorandum's characterization of the work that home care nurses perform as "a series of jobs which are repeated an indefinite number of times" may correlate with the professional activities of the licenced practical nurses supervised by the plaintiffs, it does not appear to describe the unique circumstances confronting the plaintiffs themselves during each patient visit.

The plaintiffs focus attention on the observation in the internal memorandum that the Department of Labor regulations' use of singers, artists, and illustrators as examples of professionals compensated on a fee basis suggests "that the character or nature of the job itself must be unique, and not simply that the performance of the job vary from day to day." The memorandum recognizes that the use of the examples in 29 C.F.R. § 541.313(d) was most likely intended to illustrate how the adequacy of a fee payment must be determined -- by calculating whether each fee payment is at a rate which would, in the aggregate, amount to at least $170 per week -- and that the regulations do not indicate that only professions with some relation to artistic endeavors may be compensated on a fee basis so as to qualify for the exemption.

As the author of the 1994 internal memorandum observed, the promulgators of the Department's regulations, written in 1973, probably did not contemplate the home health care industry and its per-visit means of compensating health care providers, apparently the industry standard.[2] Nevertheless, it

---

[2]Appellees in their brief before this court note that "[i]n the Cleveland area, alone, nine out of twelve contacted Medicare certified agencies who provide home health care services pay their registered

health care protocols for individual patients, and educating the patients and their families regarding participation in ongoing treatment. The plaintiffs also supervised home health care visits made by licenced practical nurses and kept administrative records for all visits to patients under their care.

The plaintiffs' individual employment relationships with the defendant were defined by signed employment agreements. As set forth in each standard agreement, the scheduling of a registered nurse's home health care visits was governed by the "25/15 Plan," which required each nurse to make at least 25 visits to patients and be on call at least 15 hours per week. Patients beginning a course of home health care treatments would be screened initially by a Health Care Ventures nursing supervisor, who would then assign each patient to one of the registered nurses performing home visits. Each nurse would then be responsible for developing an initial treatment plan for her new patient and scheduling all necessary home visits in accordance with that plan. Health Care Ventures provided guidelines for the patients' home visit schedules, but the nurses themselves devised each patient's individual treatment plan and were responsible for subsequent revisions in treatment protocols.

The nurses were compensated on a "per-visit" basis. Pursuant to an attachment to the employment agreement, the nurses received $30 for each home visit during periods when they were not "on call", and $32 per visit when "on call." The agreements were modified from time to time, so that eventually the nurses also received $37 for each visit involving any infusion therapy, and $50 for each initial assessment of a new patient. These payments included compensation for all attendant transportation and administrative duties connected with the actual visits themselves.

The "25/15 Plan" was apparently designed to approximate a 40-hour work week. Nevertheless, the plaintiffs contended

that they regularly made more than 25 total visits per week and generally documented between 50-80 hours per week of work done in conjunction with these visits. Regardless of whether the plaintiffs worked more than 40 hours during any one week, they still received the standard per-visit fee for each home visit.

The plaintiffs were all separated from employment with Health Care Ventures on or about November 4, 1996. In 1997, they filed a complaint in federal district court alleging that Health Care Ventures violated the Fair Labor Standards Act by not paying them time-and-a-half for hours worked in excess of 40 hours per week. In addressing the cross-motions for summary judgment, the district court held that the defendant had satisfactorily shown that the plaintiffs were exempt from the overtime requirements of the Act because they were "employed in a bona fide . . . professional capacity" as that term has been construed by the Department of Labor. The court thus granted the defendant's summary judgment motion, in an order that the plaintiffs now appeal.

### DISCUSSION

Under the Fair Labor Standards Act, employers must pay employees time-and-a-half for all hours worked over 40 hours per week. *See* 29 U.S.C. § 207(a)(1). Persons employed in a "bona fide . . . professional capacity," however, are exempted from the overtime pay requirements. 29 U.S.C. § 213(a)(1). The Act gives the Secretary of Labor the power to determine which jobs qualify as bona fide professional employment. *See id.* In general, however, the professional exemption is to be narrowly construed to further Congress's goal of providing broad federal employment protection. *See Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959).

Labor Department regulations construing and enforcing the Act outline several requirements for employment purported to be "professional" in nature:

*Skidmore*, 323 U.S. at 140.

The district court held that the 1992 written opinion of the Acting Administrator, and not the 1994 internal memorandum, represented the Department's position on the question at issue in this case. We agree with the district court that the Acting Administrator's 1992 opinion letter is a controlling interpretation, that it is not inconsistent with the language of the regulation nor plainly erroneous, and that it therefore meets the tests of *Auer* and *Skidmore* as persuasive legal authority in this case.

This result is supported by the plaintiffs' undisputed deposition testimony as to the uniqueness of each home health care visit made while under the defendant's employ. Each plaintiff testified that she was required to evaluate her patient's medical conditions during her initial visit, devise a treatment plan, and then make revisions to that plan as necessary during subsequent visits. The plaintiffs estimated that each patient might have as many as five distinct conditions requiring uniquely coordinated care. Even similar conditions may require different treatments depending on the severity of the condition and, in the case of wounds or ulcers, its location on the patient's person. During the course of each visit, a patient's medical condition and corresponding treatment could change. The patient's family status, educational level, and home environment all contribute to making each visit distinct from all other visits, as does the input from each patient's treating physician. Given the plaintiffs' testimony that all these factors contribute to making each patient's course of treatment unique, it is unsurprising that plaintiff Parnell testified that each visit was indeed unique:

Q: So in light of all the above, you would agree, wouldn't you, that each patient treatment, each visit really is unique from the other visit?

A: Yes, it is.

and assessments based on his or her skills in providing patient care on each visit, such work is not unique in character because unlike work performed by a singer, artist, or illustrator, the work performed by the nurse is generally repetitive and not original in character.

During the pendency of this appeal, the plaintiffs have submitted two additional opinion letters, dated April 27, 1998, and November 9, 1998, and signed by a member of the Division's Office of Enforcement Policy Fair Labor Standards Team. Both of these letters draw the same conclusion as the 1994 internal memorandum. However, as of the date of oral argument in this case, the Administrator of the Wage and Hour Division has not issued an opinion contrary to the position taken by the Administrator in 1992, to the effect that supervising nurses in a situation such as the one now before us are exempt employees.

In deciding which of these opinions, issued by the Division during different administrations, may help decide this case, we note that not all opinion letters of an administrative agency are worthy of deference by the courts. However, the Supreme Court has indicated that an opinion of the Administrator of the Wage and Hour Division of the Department of Labor has persuasive value if the position of the Administrator is well-considered and well-reasoned. In *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), the Court noted:

> We consider the rulings, interpretations and opinions of the Administrator under the Fair Labor Standards Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier pronouncements, and all those factors which give it power to persuade, if lacking power to control.

The term *employee employed in a bona fide . . . professional capacity* shall mean any employee:

(a) Whose primary duty consists of the performance of . . . [w]ork requiring knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study . . . and

(b) Whose work requires the consistent exercise of discretion and judgment in its performance; and

(c) Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; and . . .

(e) Who is compensated for services on a salary or fee basis at a rate of not less than $170 per week . . . .

29 C.F.R. § 541.3 (1999). In a dispute over whether overtime should have been paid, the employer bears the burden of showing that the professional exemption applies to the employees. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corrections*, 992 F.2d 82, 83 (6th Cir. 1993). In this case, the plaintiffs concede that their work as registered nurses making home health care visits required knowledge of an advanced type and the consistent exercise of discretion and judgment and that it was predominantly intellectual and varied in character. They contest whether Health Care Ventures has shown that they were paid on a "fee basis."

According to the Department of Labor regulations, courts should encounter "[l]ittle or no difficulty" in determining whether a particular employment arrangement involves payment on a fee basis:

Such arrangements are characterized by the payment of an agreed sum for a single job regardless of the time required for its completion. These payments in a sense resemble piecework payments with the important distinction that generally speaking a fee payment is made for the kind of job which is unique rather than for a series of jobs which are repeated an indefinite number of times and for which payment on an identical basis is made over and over again.

29 C.F.R. § 541.313(b).[1] In this case, the plaintiffs were paid an agreed-upon sum for each visit regardless of the time spent on each visit. The parties dispute, however, whether home health care visits are "unique" and thus whether per-visit payment for these visits can be considered payment on a fee basis. Heeding the Supreme Court's command that the Secretary's interpretation of Department of Labor regulations is controlling unless "plainly erroneous or inconsistent with the regulation," *Auer v. Robbins*, 117 S. Ct. 905, 911 (1997) (citations omitted), both parties present Department of Labor documents that purportedly articulate the Department's official position regarding the *uniqueness* of each home health care visit.

Health Care Ventures offers as evidence the June 1992 response of the Acting Administrator of the Wage and Hour Division of the Department to a request for advice from counsel for an employer operating a home health care service. In its request for advice, the employer described a scenario in which it paid registered nurses on a per-visit basis to provide

---

[1] Section 541.313 continues, stating that the adequacy of a fee payment to a professional employee will be determined by "whether the payment is at a rate which would amount to at least $170 per week . . . if 40 hours were worked." 29 C.F.R. § 541.313(c). The regulations then offer examples of how the adequacy of fee payments may be calculated, including scenarios featuring a singer receiving $50 for performing a song, an artist receiving $100 for painting a picture, and an illustrator receiving $150 for completing a pamphlet. *See* 29 C.F.R. § 541.313(d).

health care services to clients in their homes. According to the employer, "no employee will perform what is essentially a single repetitive task . . . over and over. Each patient's needs and situation [would be] different, and would be individually assessed and treated by the employee as the employee deems necessary during each visit. The employees must use independent, professional and largely unsupervised judgment on a case-by-case basis." In a written opinion letter, the Acting Administrator agreed that these positions would meet the exemption requirements of 29 C.F.R. § 541.3 and, in particular, that the per-visit pay plan would qualify as compensation on a fee basis within the meaning of 29 C.F.R. § 541.313.

In response, the plaintiffs offer an internal memorandum dated October 1, 1994, from counsel for the Wage and Hour Division in response to a request from the National Association for Home Care for a formal opinion as to whether per-visit compensation of a registered nurse making home visits constitutes a fee basis of payment under the Department of Labor regulations. In its letter, the Association argues that each visit made by a registered nurse to a patient's home is necessarily unique. In the response, counsel for the Department's Wage and Hour Division disagreed, concluding:

> [W]e think that payment on a "per visit" basis is probably not the type of fee payment arrangement contemplated by the regulations. Section 541.313(d) refers to payment methods made to singers, artists, and illustrator/writers to demonstrate the adequacy of a fee payment, i.e., whether the amount of payment meets the regulation's requirement that the rate of pay is "not less than $170 per week to a professional employee". The use of these professional occupations to demonstrate this point suggests to us that the character or nature of the job itself must be unique, and not simply that the performance of the job vary from day to day. While we recognize that the nurse will necessarily make professional judgments