# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Resurrection Home Health Services v. Shannon*, 2013 IL App (1st) 111605

---

| | |
|---|---|
| Appellate Court Caption | RESURRECTION HOME HEALTH SERVICES, Plaintiff and Counterdefendant-Appellee, v. CATHERINE SHANNON, in Her Official Capacity as Director of the Department of Labor, and THE DEPARTMENT OF LABOR, Defendants and Counterplaintiffs-Appellants. |
| District & No. | First District, Fourth Division Docket No. 1-11-1605 |
| Rule 23 Order filed Rule 23 Order withdrawn Opinion filed | October 18, 2012 January 3, 2013 January 10, 2013 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action against the Department of Labor by a provider of home health care services seeking a declaration that plaintiff was exempt from paying overtime wages to its employees, including registered nurses, therapists and social workers, the trial court erred as a matter of law in entering summary judgment for plaintiff on the ground that plaintiff's fee-for-visit compensation system with a guarantee of a weekly minimum amounted to compensation on a "salary basis" that was exempt from overtime, and a genuine issue of material fact existed as to whether the compensation system qualified as a "fee basis" system for purposes of being exempt from overtime. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-M1-111335; the Hon. Nancy J. Arnold, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Richard S. Huszagh, Assistant Attorney General, of counsel), for appellants. |
|---|---|
| | Seyfarth Shaw LLP, of Chicago (Edward W. Bergmann, Steven J. Pearlman, and Isabel Lazar, of counsel), for appellee. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion. Presiding Justice Lavin and Justice Fitzgerald Smith concurred in the judgment and opinion. |

**OPINION**

¶ 1                                                  BACKGROUND

¶ 2        Resurrection Home Health Services (Resurrection) is a corporation engaged in the business of providing health care services to people in their homes under a physician's supervision, often after they have been discharged from a hospital. Resurrection employees who provide these clinical home health care services include: registered nurses (RNs); physical therapists; occupational therapists; and social workers. Typical functions that RNs perform during home visits include taking vital signs, management of wounds, administration of intravenous infusions, and administration of vitamin and medication injections, drawing laboratory specimens, catheter insertions, care of gastrostomy tube insertion sites, application of compression bandages, and educating clients.

¶ 3        In February 2002, Resurrection changed its compensation structure for its RNs, physical therapists, occupational therapists, and social workers from a fixed salary to a fee-for-visit compensation which was determined by the number and type of home visits they made. The fee-for-visit compensation method pays employees a fixed sum for a given task, regardless of the amount of time it takes to complete the task. Under the new compensation method, full-time employees (excluding social workers) were required to make at least 30 visits a week. Part-time employees and full-time social workers were required to make at least 15 visits a week. Casual status employees who were ineligible for employment benefits were required to make at least 10 visits a week.

¶ 4        A routine or regular visit had the lowest fee of $34 for an RN, $43 for a physical therapist and occupational therapists, and $53 for a social worker. RNs received higher fees for other types of home visits. Employees also received a $2 travel fee for each visit. Based on these fees, the minimum weekly compensation based on the minimum fee per visit and the minimum required number of visits for full-time employees for an RN was $1,080, for a physical therapist was $1,350, for an occupational therapist was $1,350, and for a social worker was $825. The new compensation plan also provided that in any week in which an

-2-

employee did any work, the employee would receive the greater of the amount determined under the fee-for-visit method or a minimum weekly payment of $300. Resurrection's director of human resources testified that the $300 minimum weekly pay was a figure "arrived at based on the advice of counsel." Resurrection's materials describing the fee-for-visit compensation system referred to the compensation received from the minimum amount of required visits, and not the guaranteed minimum weekly pay, as the " 'base' rate of pay." In addition, Resurrection paid its employees an hourly rate which it labeled "fees" for time spent at in-house training sessions and other corporate meetings, and for paid vacations and sick leave.

¶ 5    In mid-2004, the minimum guaranteed weekly pay was increased for all workers to $475. Resurrection also increased its fee-for-visit rates for admission visits to $53 for RNs and $59 for weekend and evening admissions, $67 for regular admissions for physical therapists and occupational therapists, and $73 for weekend and evening admissions. In July 2006, Resurrection increased the minimum guaranteed weekly pay to $900 per week for full-time RNs and social workers and $1,000 for full-time physical therapists. From April 2004 to September 2007, Resurrection identified about 175 weeks when it supplemented the employees' pay under the fee-for-visit structure to pay the guaranteed minimum weekly pay.

¶ 6    Resurrection did not keep track of the time worked by its employees for their required work responsibilities and has not paid them any overtime for work performed in excess of 40 hours per week. At-home care services are a covered benefit for Medicare recipients which require standardized reports to be completed regarding the patient's condition and treatment. A routine visit for a client may take half an hour or more, and preparation of the required postvisit documentation can require substantial additional time. Initial admission visits take more time than routine visits, both for the actual visit and for the preparation of the paperwork. Also part of the employees' work responsibilities was transporting lab samples, faxing assignments, making telephone calls to order supplies, locating patients, mapping routes for multiple daily visits, and other administrative matters.

¶ 7    On or about July 28, 2003, 16 Resurrection workers submitted overtime complaints to the Illinois Department of Labor (the Department or IDOL) Fair Labor Standards Division. The Department then conducted an investigation into whether Resurrection's home health care clinical workers were exempt from the overtime provisions of the Illinois Minimum Wage Law (820 ILCS 105/1 *et seq.* (West 2002))[1] under the fee-for-visit compensation scheme. A compliance officer for the Department completed the investigation on March 23, 2004, and concluded that the employees were professional employees exempt from overtime requirements. On April 29, 2004, the 16 employees filed a petition to intervene in the investigation, asserting that the compliance officer's conclusion was incorrect as a matter of fact and law and requesting a hearing. On March 23, 2005, the compliance officer completed

---

[1]Reference is made here to the Illinois Minimum Wage Law provisions in effect in 2002 because this was the version in effect at the time of the complaints. However, as detailed below, the overtime provision was amended in 2004 and litigation in this case limited the relevant time period for the overtime wages sought from Resurrection by the Department to the period of May 8, 2004, through September 2, 2006. Thus, later cites to the overtime provision are to the 2004 amendment.

a second audit, concluding again that the employees were exempt professional employees who were not entitled to overtime.

¶ 8        After investigation and hearings, on January 11, 2006, an administrative law judge issued a decision concluding that Resurrection violated overtime requirements for the 16 employee nurses, physical therapists, and social workers. Although the administrative law judge found that the workers were *bona fide* professional employees, she held that Resurrection's compensation structure was not on a "salary basis" or "fee basis" under the Illinois Minimum Wage Law and incorporated federal regulations, and thus, the employees were not exempt and were owed overtime wages. The Department issued its decision on June 27, 2007, concluding that $59,073.74 was owed in overtime wages to seven employees. The chief administrative law judge held a hearing on Resurrection's request for review of the decision that the 16 employees were owed overtime wages. On June 29, 2007, the chief administrative law judge affirmed the decision. On September 21, 2007, a second audit by the Department concluded that $322,218.46 was owed in overtime wages to another 166 employees. Resurrection sought further review of the Department's decision and appealed the decision internally to the Director on October 5, 2007. On March 6, 2008, an administrative law judge, acting as the representative and designee of the Department and its Director, affirmed the findings of the Department.

¶ 9        Resurrection subsequently brought this action against the Department, seeking review of the administrative law judge's decision of January 11, 2006, and a declaration that the Department's own decision was incorrect, and that its clinical home health care workers were exempt from the Illinois Minimum Wage Law's overtime requirements. The Department filed a counterclaim, alleging the relevant time period for the wage structure was May 8, 2004, through September 2, 2006, and seeking a judgment requiring Resurrection to pay overtime to the affected employees.

¶ 10       Neither Resurrection's second amended complaint nor the Department's counterclaim identified any of the individuals Resurrection claimed were exempt from overtime compensation. A number of Resurrection employees communicated to Resurrection or its attorneys that they did not want to participate in the proceedings. Other employees failed to appear for depositions that Resurrection had scheduled. In its brief, the Department states that one former Resurrection employee testified at her deposition that Resurrection's director of human resources had contacted her and asked whether she wanted to "drop" the case. However, the employee, Margaret Burszcyk, testified that she forgot about her deposition and failed to appear, which is when she received the call from Resurrection's director of human resources. She testified that she called to reschedule her deposition.

¶ 11       Resurrection subsequently filed a motion to "dismiss the claims of individuals who opted-out of this lawsuit or, in the alternative, [to] prevent such individuals from recovering any damages in this case." Resurrection alleged that some of the individuals identified in its motion had refused to sit for depositions and that, consequently, their "claims" should be dismissed. The Department responded that none of the employees in question was a party in the case, and that in any event, section 12 of the Illinois Minimum Wage Law (820 ILCS 105/12 (West 2004)) gives the Department the authority, independent of the right of an employee, to enforce the Illinois Minimum Wage Law and bring an action against the

employer. The Department also argued that the court's power to impose discovery sanctions against a party for discovery violations did not authorize the dismissal of its claim as a result of the actions of nonparty witnesses. At the hearing on Resurrection's motion, the circuit court found that while the individuals were not parties who could be dismissed, on the issue of damages it would be unfair for Resurrection to defend against the Department's counterclaim with respect to the individuals who refused to appear for depositions. The court then entered an order granting Resurrection's motion in part and prohibiting the Department from "offering any evidence or making any claim" relating to the issue of damages with respect to any of the individuals identified by Resurrection as so-called "opt-out" claimants.

¶ 12     Resurrection also filed a motion for summary judgment, arguing that its clinical home health care workers were "*bona fide* professionals" who were exempt from the overtime requirements of the Illinois Minimum Wage Law. The Department filed a cross-motion for summary judgment arguing these employees were not exempt. The Department stipulated that the employees were learned professionals and met the requirements set forth in 29 C.F.R. § 541.301(a) (2012). The stipulation sets forth as follows:

> "The IDOL stipulates that at all relevant times to the claims and counter-claims in this lawsuit, RHHS' Registered Nurses, Physical and Occupational Therapists and MSW Social Workers performed work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes within the meaning of 29 C.F.R. 541.301(a)."

The parties remained opposed on the issue of whether the employees were paid on a "salary or fee basis."

¶ 13     The circuit court granted Resurrection's motion for summary judgment and denied the Department's cross-motion for summary judgment. The court ruled that Resurrection's clinical home health care workers are paid on a salary basis, and not a fee basis, because Resurrection guaranteed the workers a minimum weekly payment of $300.

¶ 14     The Department appeals the grant of Resurrection's motion for summary judgment and denial of its cross-motion for summary judgment, and also appeals the order limiting claims and damages for employees who did not appear for their depositions.

¶ 15                                    ANALYSIS

¶ 16     The Department argues that the circuit court erred in granting plaintiff summary judgment and in denying their cross-motion for partial summary judgment. The Department also appeals from an earlier order prohibiting the Department from asserting claims or presenting evidence concerning Resurrection employees who did not appear for their depositions.

¶ 17                    I. Summary Judgment on the Issue of Salary Basis

¶ 18     At issue are the overtime requirements of the Illinois Minimum Wage Law (820 ILCS

105/1 *et seq.* (West 2004)), and the incorporated federal regulations, as they apply to home health care workers. The issue of whether health care workers' compensation qualifies for overtime protection has been an issue nationally, with inconsistent results and no clear definitive regulation stating that such workers are either exempt or not exempt. Rather, the applicable version of the regulations in this case necessitates an analysis of the pay structure for these workers. The circuit court below granted Resurrection summary judgment because it found that Resurrection's pay structure exempted the employees from overtime pay. The court denied the Department's cross-motion for summary judgment. We review whether the court's grant of summary judgment in favor of Resurrection was appropriate.

¶ 19    Section 2-1005(b) of the Code of Civil Procedure provides: "A defendant may, at any time, move with or without supporting affidavits for a summary judgment in his or her favor as to all or any part of the relief sought against him or her." 735 ILCS 5/2-1005(b) (West 2008). Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). See also *Farm Bureau Mutual Insurance Co. v. Alamo Rent A Car, Inc.*, 319 Ill. App. 3d 382, 386 (2000) (holding that summary judgment is appropriate only where there is no genuine issue of material fact and the pleadings, depositions, and affidavits show that the moving party is entitled to a judgment as a matter of law). Although summary judgment is appropriate if a plaintiff cannot establish an element of his claim, it should only be granted when the right of the moving party is clear and free from doubt. *Dardeen v. Kuehling*, 213 Ill. 2d 329, 335 (2004). "If, from a review of the pleadings and evidentiary material before the trial court, a reviewing court determines that a material issue of fact exists or that the summary judgment was based upon an erroneous interpretation of the law, a reversal is warranted." *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 909 (1994) (citing *Reed v. Fleming*, 132 Ill. App. 3d 722 (1985), and *Warren v. Lemay*, 144 Ill. App. 3d 107 (1986)), *appeal denied*, 155 Ill. 2d 566 (1994). Summary judgment orders are reviewed *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 20    Although the use of a summary judgment procedure is encouraged as an aid in expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). The court in *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 688 (2000), explained the two differing types of summary judgment motions:

> "A defendant who moves for summary judgment may meet its initial burden of production in at least two ways: (1) by affirmatively disproving the plaintiff's case by introducing evidence that, if uncontroverted, would entitle the movant to judgment as a matter of law (traditional test) (see *Purtill v. Hess*, 111 Ill. 2d 229, 240-41 *** (1986)), or (2) by establishing that the nonmovant lacks sufficient evidence to prove an essential element of the cause of action (*Celotex* test) (see *Rice v. AAA Aerostar, Inc.*, 294 Ill. App. 3d 801, 805 *** (1998), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 *** (1986); [citation] )."

¶ 21        Here, Resurrection brought the first type of motion under *Purtill*, and argued that it was entitled to judgment as a matter of law because its employees were exempt. We determine that the circuit court erred in its interpretation of the Illinois Minimum Wage Law, and federal provisions which are incorporated by reference, and that it incorrectly granted summary judgment to Resurrection, as its home health care workers are not exempt from overtime requirements under the Illinois Minimum Wage Law.

¶ 22        Section 4a(1) of the Illinois Minimum Wage Law generally requires employers to pay employees time and a half for any hours worked more than 40 in one workweek. 820 ILCS 105/4a(1) (West 2004). In its counterclaim in the instant case, the Department sought overtime pay for Resurrection workers under Resurrection's wage structure only from May 8, 2004, through September 2, 2006. In its answer to Department's counterclaim, Resurrection admitted that the relevant time period for overtime wages sought under Resurrection's wage structure was May 8, 2004, through September 2, 2006. Section 4a of the Minimum Wage Law in effect during this time period provides the following regarding overtime wage requirements:

> "§ 4a. (1) Except as otherwise provided in this Section, no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 ½ times the regular rate at which he is employed.

> (2) The provisions of subsection (1) of this Section are not applicable to:

> * * *

> E. Any employee employed in a bona fide executive, administrative or professional capacity, including any radio or television announcer, news editor, or chief engineer, as defined by or covered by the Federal Fair Labor Standards Act of 1938 [29 U.S.C. § 201 *et seq.*] and the rules adopted under that Act, as both exist on March 30, 2003, but compensated at the amount of salary specified in subsections (a) and (b) of Section 541.600 of Title 29 of the Code of Federal Regulations as proposed in the Federal Register on March 31, 2003 or a greater amount of salary as may be adopted by the United States Department of Labor." 820 ILCS 105/4a (West 2004).

¶ 23        The Illinois General Assembly opted not to define the circumstances under which an employee is exempt from the overtime requirements of the Wage Law; instead, it has chosen to defer to decisions by Congress and the United States Department of Labor. *Robinson v. Tellabs, Inc.*, 391 Ill. App. 3d 60, 65 (2009) (referring to " 'bona fide executive, administrative or professional capacity' *** 'as defined by or covered by the Federal Fair Labor Standards Act of 1938' " (quoting 820 ILCS 105/4a(2)(E) (West 2000))). The Fair Labor Standards Act of 1938 (29 U.S.C. § 201 *et seq.*) sets the standard workweek at 40 hours and requires employers to pay their non-exempt employees one and one-half times their regular rate of pay for any hours worked in excess of 40. 29 U.S.C. § 207(a)(1) (2006). A violation of the Illinois Minimum Wage Law is contingent on establishing a violation under the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 *et seq.*). *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 376 (7th Cir. 2005) (citing 820 ILCS 105/4a(2)(E)

(West 2002)). "The overtime provision of the Illinois Minimum Wage Law, 820 ILCS 105/4a(1), is parallel to that of the [Fair Labor Standards Act of 1938 (29 U.S.C. § 201 *et seq.*)], and Illinois courts apply the same principles \*\*\*." *Urnikis-Negro v. American Family Property Services*, 616 F.3d 665, 672 n.3 (7th Cir. 2010).

¶ 24    The federal Fair Labor Standards Act of 1938 grants overtime exemption to "any employee employed in a bona fide executive, administrative or professional capacity," but also does not define those terms. 29 U.S.C. § 213(a)(1) (2000). "Instead, Congress granted 'the Secretary [of Labor] broad authority to "defin[e] and delimi[t]" the scope of the exemption for executive, administrative, and professional employees.' " *Robinson*, 391 Ill. App. 3d at 65 (quoting *Auer v. Robbins*, 519 U.S. 452, 456 (1997), and citing 29 U.S.C. § 213(a)(1) (2000)).

¶ 25    Part 541 of the Secretary of Labor's Fair Labor Standards Act regulations defines and delimits the exemptions for executive, administrative, professional, computer and outside sales employees. 29 C.F.R. pt. 541. Subpart A contains general regulations, including definitions of certain terms used in the regulations. 29 C.F.R. § 541.0 *et seq.* Subpart D governs professional employees. 29 C.F.R. § 541.300 *et seq.* Subpart G contains salary requirements for the various exempt categories. 29 C.F.R. § 541.600 *et seq.* We examine each of the relevant regulations in turn to determine whether the employees under Resurrection's pay structure at issue in this case are exempt from overtime pay requirements as a matter of law.

¶ 26    "Under the United States Department of Labor's \*\*\* regulations, the employer must satisfy two tests to exempt its employees from overtime pay." *Robinson*, 391 Ill. App. 3d at 65 (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)). "First, the employee must perform executive, administrative, or professional duties ('the duties test'); second, the employee must be paid on a 'salary basis' ('the salary basis test')." *Robinson*, 391 Ill. App. 3d at 65-66 (citing 29 C.F.R. §§ 541.1-541.3 (2001)).

¶ 27    Section 541.301 of title 29, part 541, subpart D, defines learned professionals as follows:
"§ 541.301 Learned professionals.

     (a) To qualify for the learned professional exemption, an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. This primary duty test includes three elements:

     (1) The employee must perform work requiring advanced knowledge;

     (2) The advanced knowledge must be in a field of science or learning; and

     (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301 (2004).

¶ 28    The Department here stipulated that the home health care workers were "learned professionals" as defined in section 541.301(a) of the regulations under the federal Fair Labor Standards Act. See 29 C.F.R. § 541.301(a). Thus, the "duties test" here is met and undisputed. Only the "salary basis test" and, alternatively, the "fee basis" test are at issue.

¶ 29    The Department argues that the circuit court's determination that Resurrection's fee-for-

visit with a guaranteed minimum weekly pay was a "salary basis" of compensation does not comport with the administrative interpretation of this requirement under *Robinson*, 391 Ill. App. 3d 60. Resurrection argues that its compensation structure qualifies as a "salary basis" because of the minimum guaranteed weekly pay amount.

¶ 30    Section 4a(2)(E) of the Minimum Wage Law in effect for the relevant time period applies to an

"employee employed in a bona fide executive, administrative or professional capacity ***, as defined by or covered by the Federal Fair Labor Standards Act of 1938 [(29 U.S.C. § 201 *et seq.*)] and the rules adopted under that Act, *as both exist on March 30, 2003*, but compensated at the amount of salary specified in subsections (a) and (b) of Section 541.600 of Title 29 of the Code of Federal Regulations *as proposed in the Federal Register on March 31, 2003* or a greater amount of salary as may be adopted by the United States Department of Labor. " (Emphases added.) 820 ILCS 105/4a (West 2004).

The term "salary basis" is defined in section 541.602. 29 C.F.R. § 541.602 (2012). Section 541.118(a) defines "salary basis" for "*bona fide* professional employees" as follows:

"(a) An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he *regularly receives each pay period on a weekly*, or less frequent basis, *a predetermined amount constituting all or part of his compensation*, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, *the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked*. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work." (Emphases added.) 29 C.F.R. § 541.118(a) (2003).[2]

¶ 31    Section 541.118(b) also includes a minimum weekly amount, plus extra compensation, as a pay structure that qualifies as a "salary basis" of compensation, and explains as follows:

"(b) *Minimum guarantee plus extras*. It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment. The requirement will be met, for example, by a branch manager who receives a salary of $155 or more a week and in addition, a commission of 1 percent of the branch sales. The requirement will also be met by a branch manager who receives a percentage of the sales or profits of the branch, if the employment arrangement also includes a guarantee of at least the minimum weekly salary (or the equivalent for a monthly or other period) required by the regulations. Another type of situation in which the requirement will be met is that of an employee paid on a daily or shift basis, if the employment arrangement includes a provision that the employee will receive not less than the amount specified in the regulations in any week in which the employee performs

---

[2]29 C.F.R. § 541.118 was amended in 2004. The parties assert, and we agree, that the preamendment version of section 541.118 applies.

any work. Such arrangements are subject to the exceptions in paragraph (a) of this section. The test of payment on a salary basis will not be met, however, if the salary is divided into two parts for the purpose of circumventing the requirement of single payment 'on a salary basis'. For example, a salary of $200 in each week in which any work is performed, and an additional $50 which is made subject to deductions which, are not permitted under paragraph (a) of this section." 29 C.F.R. § 541.118(b) (2003).

¶ 32       Further, section 4a of the Illinois Minimum Wage Law (820 ILCS 105/4a (West 2004)) requires that the amount of salary must be no less than the amount specified in section 541.600 of title 29 in the Code of Federal Regulations in effect on March 31, 2003, which was as follows:

"§ 541.600 Amount of salary required.

(a) To qualify as an exempt executive, administrative or professional employee under section 13(a)(1) of the Act, an employee must be compensated on a salary basis at a rate of not less than $455 per week ***." 29 C.F.R. § 541.600(a) (2012).

¶ 33       The circuit court here granted Resurrection summary judgment because it found that Resurrection's compensation structure qualified under the salary basis test and was exempt: "In sum, the court finds that by guaranteeing that its employees' salaries never fall below a weekly minimum, Resurrection's compensation plan is salary-based as defined by 29 CFR [§] 541.118." We find this determination was error as a matter of law.

¶ 34       Under section 541.118(a), a " 'predetermined amount' is defined as the amount that is 'regularly receive[d] each pay period.' " (Emphases omitted.) *Hurley v. Oregon*, 27 F.3d 392, 395 (9th Cir. 1994) (quoting 29 C.F.R. § 541.118(a) (2001)). In *Hurley*, the Ninth Circuit Court of Appeals held that because the Oregon State Police could reduce pay for violations of department rules or policies, the affected employees were not "paid on a 'salary basis.' " *Hurley*, 27 F.3d at 393. The court in *Hurley* held:

"[C]ompensation that is *subject to change* by the employer at the end of each pay period *is simply not a 'salary'*–under the applicable regulation or the plain meaning of that term. The state cannot be permitted to circumvent the express language and clear purpose of the regulations with its artificial distinction, regardless of its ingenuity." (Emphases in original.) *Hurley*, 27 F.3d at 396.

¶ 35       Similarly here, the fact that the weekly pay was subject to change, and that the guaranteed minimum rate was only paid in the event the regular fee-for-visit compensation fell short, demonstrates that it simply is not a salary. Resurrection's guaranteed minimum was not paid each pay period; rather, it was an alternative only when the fees-for-visit were too low. In other words, the guaranteed minimum was not part of the employees' base pay paid every week. Thus, it is not compensation on a "salary basis." Had the structure been a set minimum amount paid every pay period, supplemented with fees-for-visits, it would have qualified as a "salary basis" compensation structure. See 29 C.F.R. § 541.118(b) (2003). As it was, however, the guaranteed minimum was only a fallback alternative level of compensation and was not paid every pay period. Thus, Resurrection's employees were not paid on a "salary basis," and so are not exempt from the Illinois Minimum Wage Law on this basis.

¶ 36       Further, we find that Resurrection's reliance on *Chevron U.S.A. Inc. v. Natural Resources*

*Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984), in arguing that the United States Department of Labor's interpretation in opinion letters cited by the Department (Dep't of Labor Wage & Hour Op. Ltr. (Sept. 3, 1999), 1999 WL 1788150; Dep't of Labor Wage & Hour Op. Ltr. (Dec. 30, 1988), 1998 WL 1147746) not only is disingenuous, but also undercuts Resurrection's own argument, as Resurrection itself also cites to opinion letters (Dep't. of Labor Wage & Hour Op. Ltr. (Jan. 20, 1998), 1998 DOLWH LEXIS 4). We have previously noted that Congress gave the United States Secretary of Labor broad authority to define the scope of the exemption. *Robinson*, 391 Ill. App. 3d at 65 (quoting *Auer v. Robbins*, 519 U.S. 452, 456 (1997), and citing 29 U.S.C. § 213(a)(1) (2000)). The United States Department of Labor's interpretation of its own regulation has been held as "controlling 'unless [it is] plainly erroneous or inconsistent with the regulation.' " *Robinson*, 391 Ill. App. 3d at 66-67 (quoting *Auer*, 519 U.S. at 461). However, as many courts have recognized, the Supreme Court has retreated from the broad sweep of *Chevron*. In *Christensen v. Harris County*, 529 U.S. 576 (2000), the Supreme Court held that a court must give effect to an agency's regulation containing a reasonable interpretation of an ambiguous statute, but interpretations such as those in opinion letters, like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law, do not warrant such deference. *Christensen*, 529 U.S. at 587.

¶ 37    We find that the regulations regarding the overtime exemption requirements are clear and do not necessitate analysis of, or deference to, the opinion letters. Section 541.118(a) in title 29 of the Code of Federal Regulations specifically requires that, to qualify as payment on a "salary basis," the employee must "*regularly receive[ ] each pay period* on a weekly, or less frequent basis, *a predetermined amount constituting all or part of his compensation*." (Emphases added.) 29 C.F.R. § 541.118(a) (2003). The undisputed facts establish that the alternative minimum pay guaranteed by Resurrection was not regularly received by the employees each pay period as all or part of their compensation. They received *either* their fee-for-visit compensation, *or* they received the minimum amount. The minimum amount was not part of their regular weekly pay every pay period. Thus, we agree with the Department that Resurrection's wage structure does not meet the "salary basis" test.

¶ 38    Having concluded that the wage structure itself does not meet the "salary basis" test, and that we are not bound to give deference to opinion letters, we therefore need not reach the parties' argument regarding whether the alternative minimum salary meets the "reasonable relationship to regular pay" test articulated in an opinion letter prior to 2004. We do, however, note that Resurrection's reliance on the minimum guaranteed salary amounts instituted in July 2006 as being "exceptionally close" to the pay that was actually received is not well grounded, as these salary amounts were instituted in July 2006, a time period that is not relevant to this case. The investigation and hearing before the administrative law judge took place in 2004 and 2005, and the administrative law judge issued her decision on January 11, 2006, finding Resurrection's pre-2006 pay structure was unlawful. From 2002 until mid-2004, Resurrection's employees' alternative minimum weekly pay was $300. From May 2004 until June 2006, Resurrection's employees' alternative minimum weekly pay was $475, which is hardly a figure that can correspond to the employees' normal weekly pay.

¶ 39    The parties allege differing time periods for analysis of the wage structure. Although

Resurrection contends that the relevant time period for analysis of its compensation structure is April 24, 2004, through September 2, 2006, the time period alleged in the Department's counterclaim, Resurrection's second amended complaint sought review of the administrative law judge's January 11, 2006, decision, and subsequent affirmance of its decision on June 29, 2007. That decision was the determination that the 16 employees who first submitted their claims for overtime on July 28, 2003 were not exempt from overtime requirements. Resurrection sought a declaratory judgment regarding the pay practices at issue in the original claim filed on July 28, 2003. Thus, the compensation structure in place, and overtime owed, through 2003 was at issue in Resurrection's second amended complaint seeking review of the administrative law judge's decision and subsequent decision by the chief administrative law judge. The Department's counterclaim, on the other hand, alleged the relevant time period for the wage structure was May 8, 2004, through September 2, 2006.

¶ 40    However, although beginning in July 2006, the alternative minimum weekly pay was increased to $900 per week for full-time RNs and social workers and $1,000 for full-time physical therapists, the alternative minimum weekly pay was still not regularly paid each pay period. As we have stated, the alternative minimum guaranteed weekly pay amount was not regularly paid each week, even after the 2004 and 2006 increases in the minimum guaranteed amount, and thus Resurrection's compensation structure does not qualify as a "salary basis" under the applicable federal regulations. Therefore, we conclude the circuit court erred as a matter of law in granting Resurrection summary judgment on this basis.

¶ 41                II. Genuine Issue of Material Fact Regarding "Fee Basis" Test

¶ 42    We also find that summary judgment was inappropriately granted because there is a genuine issue of material fact whether the employees' salary meets the "fee basis" test.

¶ 43    The term "fee basis" is defined at section 541.605. 29 C.F.R. § 541.605. Section 541.605 provides as follows:

"§§ 541.605 Fee basis.

(a) Administrative and professional employees may be paid on a fee basis, rather than on a salary basis. An employee will be considered to be paid on a 'fee basis' within the meaning of these regulations if the employee is *paid an agreed sum for a single job regardless of the time required for its completion*. These payments resemble piecework payments with the important distinction that generally *a 'fee' is paid for the kind of job that is unique rather than for a series of jobs repeated an indefinite number of times and for which payment on an identical basis is made over and over again*. Payments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis.

(b) To determine whether the fee payment meets the minimum amount of salary required for exemption under these regulations, the amount paid to the employee will be tested by determining the time worked on the job and whether the fee payment is at a rate that would amount to at least $455 per week if the employee worked 40 hours. Thus, an artist paid $250 for a picture that took 20 hours to complete meets the minimum salary requirement for exemption since earnings at this rate would yield the artist $500 if 40

-12-

hours were worked." (Emphases added.) 29 C.F.R. § 541.605.

¶ 44    Further, section 514.313, which was in effect on March 31, 2003 (see 820 ILCS 105/4a (West 2002)) (incorporating the rules adopted under the federal Fair Labor Standards Act of 1938 that were in effect on March 31, 2003), provides, in full, as follows:

"§ 541.313 Fee basis.

(a) The requirements for exemption as a professional (or administrative) employee may be met by an employee who is compensated on a fee basis as well as by one who is paid on a salary basis.

(b) Little or no difficulty arises in determining whether a particular employment arrangement involves payment on a fee basis. Such arrangements are characterized by the payment of an agreed sum for a single job regardless of the time required for its completion. These payments in a sense resemble piecework payments with the important distinction that *generally speaking a fee payment is made for the kind of job which is unique rather than for a series of jobs which are repeated an indefinite number of times and for which payment on an identical basis is made over and over again*. Payments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis. The type of payment contemplated in the regulations in subpart A of this part is thus readily recognized.

(c) The adequacy of a fee payment. Whether it amounts of payment at a rate of not less than $170 per week to a professional employee or at a rate of not less than $155 per week to an administrative employee can ordinarily be determined only after the time worked on the job has been determined. In determining whether payment is at the rate specified in the regulations in subpart A of this part the amount paid to the employee will be tested by reference to a standard workweek of 40 hours. Thus compliance will be tested in each case of a fee payment by determining whether the payment is at a rate which would amount to at least $170 per week to a professional employee or at a rate of not less than $155 per week to an administrative employee if 40 hours were worked.

(d) The following examples will illustrate the principle stated above:

(1) A singer receives $50 for a song on a 15-minute program (no rehearsal time is involved). Obviously the requirement will be met since the employee would earn $170 at this rate of pay in far less than 40 hours.

(2) An artist is paid $100 for a picture. Upon completion of the assignment, it is determined that the artist worked 20 hours. Since earnings at this rate would yield the artist $200 if 40 hours were worked, the requirement is met.

(3) An illustrator is assigned the illustration of a pamphlet at a fee of $150. When the job is completed, it is determined that the employee worked 60 hours. If the employee worked 40 hours at this rate, the employee would have earned only $100. The fee payment of $150 for work which required 60 hours to complete therefore does not meet the requirement of payment at a rate of $170 per week and the employee must be considered nonexempt. It follows that if in the performance of this assignment the illustrator worked in excess of 40 hours in any week, overtime rates must be paid. Whether or not the employee worked in excess of 40 hours in any week, records for such

an employee would have to be kept in accordance with the regulations covering records for nonexempt employees (part 516 of this chapter)." (Emphasis added.) 29 C.F.R. § 541.313 (2003).

¶ 45 Resurrection argues that the work performed by its home health care workers was sufficiently unique to meet the "fee basis" test, relying on *Fazekas v. Cleveland Clinic Foundation Health Care Ventures, Inc.*, 204 F.3d 673, 679 (6th Cir. 2000), where the court found that home healthcare nurses' work was unique for each visit. Meanwhile, the Department contends the workers perform a series of repetitive duties such that they do not qualify for an exemption from overtime pay requirements. The court in *Fazekas* acknowledged that the Department of Labor's opinion letters were inconsistent regarding the uniqueness of the work of home health care nurses and whether such workers were exempt from overtime pay provisions. *Fazekas*, 204 F.3d at 679. We note that *Fazekas* was decided before the Supreme Court decision in *Christensen* holding that agency interpretations do not warrant deference, while a regulation does. *Christensen*, 529 U.S. at 587. Thus, we again do not look to the opinion letters. There has yet to be clear guidance in the federal regulations on the issue of home health care workers.

¶ 46 However, we do find the court's analysis in *Fazekas* instructive. The court in *Fazekas* acknowledged that the work of home health care workers may vary from case to case. The *Fazekas* appeals court held that there were "unique circumstances" confronting the workers during each patient visit under the facts of that case, and thus the workers were exempt from overtime requirements. *Fazekas*, 204 F.3d at 678. However, the court acknowledged:

"In other circumstances, however, the work of nurses performing home health care visits may indeed become merely 'a series of jobs which are repeated an indefinite number of times,' 29 C.F.R. § 313(b), and in such cases those nurses would not qualify for the professional exemption." *Fazekas*, 204 F.3d at 679.

¶ 47 Here the parties dispute whether the nature of the work of Resurrection's nurses, therapists and social workers was sufficiently repetitive as to require overtime, or whether each patient visit was sufficiently unique under federal regulation section 541.313 (29 C.F.R. § 541.313). Resurrection argues that the workers testified that each patient's needs and conditions differed and their conditions changed from visit to visit. Meanwhile, the Department cites to testimony where a home health care nurse testified "the patient's [*sic*] are not routine, but what I do is pretty much routine." The Department also cites to further testimony that the work was "pretty much *** routine protocols, *** routine care for each patient, but it varies from one diagnosis to [a] different diagnosis."

¶ 48 We find there is a genuine issue of material fact whether Resurrection's pay structure for its home health care employees qualifies as a "fee basis" method of compensation. Therefore, on this additional basis, the grant of summary judgment in favor of Resurrection must be reversed. Although we have found that the circuit court erred in granting summary judgment as a matter of law to Resurrection in finding that its compensation structure satisfied the "salary basis" test, we cannot on the other hand conclusively determine that Resurrection's compensation structure satisfies the "fee basis" test as a matter of law. Thus, the denial of the Department's cross-motion for summary judgment was not error. There is a genuine issue

of material fact whether the "fee basis" test was met under the facts of this case, and thus the circuit court erred in granting summary judgment to Resurrection.

¶ 49        III. Order Limiting the Department's Claim for Damages

¶ 50    The Department also argues that the circuit court's "opt-out" order limiting the Department's pursuit of its claim regarding certain Resurrection employee witnesses who did not appear for their deposition was error. We agree.

¶ 51    As the Department correctly argues, when a nonparty fails to comply with a subpoena for deposition, Supreme Court Rule 204(d) permits the court to compel the nonparty's appearance, but it does not permit the court to punish a party for the nonparty's failure to appear. Ill. S. Ct. R. 204(d) (eff. Dec. 16, 2010). Rule 219(c) authorizes the court to enter sanctions, which include barring a witness from testifying on an issue and barring the offending party from maintaining a claim when a nonparty fails to comply with his discovery obligations, but such noncompliance must be "at the instance of or in collusion with a party." Ill. S. Ct. R. 219(c) (eff. July 1, 2002). We note that the nonparty witnesses were not even under the control of the Department, but rather, instead, can be said to be more appropriately considered under the control of Resurrection, since they were Resurrection's employees. See *Vortanz v. Elmhurst Memorial Hospital*, 179 Ill. App. 3d 584, 591 (1989) (holding that the dismissal in medical malpractice action after patient's expert failed to appear for deposition on date ordered by trial judge was an abuse of discretion where the expert was not under the direct control of the plaintiff or his attorneys). We will not speculate whether Resurrection intended to actually not depose the witnesses or did anything to discourage their appearance. However, there is no evidence that the witnesses failed to appear "at the instance of or in collusion with" the Department. See *Walton v. Throgmorton*, 273 Ill. App. 3d 353, 358 (1995) (holding that dismissal as discovery sanction for the failure of the plaintiff to take the depositions of the defendant and defense counsel's secretary before discovery deadline was improper because there was no indication that discovery was thwarted by plaintiff). The circuit court's sanction of barring the Department's claims regarding the non-appearing Resurrection employee witnesses was an abuse of discretion.

¶ 52    Further, regardless of whether these employees wished to cooperate and collect any damages, the Department has not only an independent statutory right to sue an employer for noncompliance with the Illinois Minimum Wage Law (820 ILCS 105/12(b) (West 2004)), but it is the "duty" of the Department "to inquire diligently for any violations of this Act, and to institute the action for penalties herein provided, and to enforce generally the provisions of this Act." 820 ILCS 105/11(d) (West 2004). There is no "opt-out" provision under the Illinois Minimum Wage Law. See 820 ILCS 105/1 *et seq.* (West 2004). On the contrary, there is a strong public policy stated in the Illinois Minimum Wage Law:

    "It is against public policy for an employer to pay to his employees an amount less than that fixed by this Act. Payment of any amount less than herein fixed is an unreasonable and oppressive wage, and less than sufficient to meet the minimum cost of living necessary for health. Any contract, agreement or understanding for or in relation to such unreasonable and oppressive wage for any employment covered by this Act is

-15-

void." 820 ILCS 105/2 (West 2004).

Thus, without any proof of sanctionable conduct, the court cannot limit the Department's right to pursue claims on behalf of the employees.

¶ 53 We also find merit in the Department's argument that the court could not use any purported difficulty in proving damages as a reason to bar the Department from pursuing this action regarding the employees at issue who did not appear for their deposition. Section 8 of the Illinois Minimum Wage Law requires the employer to keep records of the hours worked by its employees. See 820 ILCS 105/8 (West 2004). Therefore, the order was an abuse of discretion and must be reversed and vacated.

¶ 54                                    CONCLUSION

¶ 55 We determine the circuit court erred in granting summary judgment for two reasons. First, the court erred as a matter of law in finding that Resurrection's wage structure was a "salary basis" of compensation under the applicable federal regulations incorporated by the Illinois Minimum Wage Law. Second, there is a genuine issue of material fact whether the work performed by Resurrection employees qualifies under the "fee basis" test in the federal regulations. Thus, granting summary judgment to Resurrection was inappropriate and we reverse and remand for further proceedings. Due to the existence of genuine issues of material fact, the denial of the Department's cross-motion for summary judgment was not erroneous and therefore we affirm that order denying the Department's motion.

¶ 56 We also determine that the circuit court's order barring the Department's claims under the Illinois Minimum Wage Law as to certain employees who did not appear for deposition was an abuse of discretion, as there was no evidence the non-appearing witnesses failed to appear for their depositions at the instance of or in collusion with the Department. There also was no basis for the order where the Department had an independent right and duty to maintain an action under the Illinois Minimum Wage Law on behalf of the non-appearing employee witnesses.

¶ 57 Reversed and remanded.